**In re Ernesto C. CHING, M.D.**

No. 07–00–0346–CV.

Court of Appeals of Texas, Amarillo.

Sept. 28, 2000.

Monning & Wynne, Bruce Monning, Rebecca L. Price, Dallas, Richard, Lee, Cobb & Hall, Howell C. Cobb, III, El Paso, for relator.

Gibson, Ochsner & Adkins, Thomas C. Riney, Christopher D. Wolek, Amarillo,

Crenshaw, Dupree & Milam, William J. Wade, Lubbock, for appellee.

Before BOYD, C.J., and QUINN and REAVIS, JJ.

JOHN T. BOYD, Chief Justice.

In this original proceeding, relator Ernesto C. Ching, M.D., seeks a writ of mandamus directed to the Honorable Cecil Puryear, Judge of the 137th District Court of Lubbock County, directing him to order the real party in interest to permit the discovery of certain items we will later discuss. In the suit underlying this proceeding, Ching, who is a pediatric heart surgeon, asserted claims against the Methodist Hospital, Lubbock, and its subsidiary, Methodist Children's Hospital (the Hospitals), for violations of the Texas Antitrust Act by suspending his privileges to perform pediatric heart surgery at the Hospitals.

In the course of pretrial preparation, Ching sought discovery of some 12 categories of evidence to which the Hospitals asserted objections. With the admission that they sometimes overlap, Ching characterizes the categories of evidence as relating to three issues: 1) how other pediatric heart surgeons were treated when they had unfavorable outcomes similar to Ching's; 2) patient records in other mortalities involving pediatric heart surgery; and 3) certain economic and demographic evidence relating to income the Hospitals derived from their association with other doctors Ching alleged to be co-conspirators.

In pursuing his quest for mandamus relief, Ching suggests there are two issues presented for our decision. These are:

1. whether evidence in any of the following categories is relevant to Ching's antitrust claims against the Hospitals:

a. records of how the Hospitals dealt with mortalities or questionable results involving pediatric heart surgery by surgeons other than Dr. Ching.

b. The content and timing of applications by other surgeons, affiliated with a co-conspirator, who sought privileges to perform pediatric heart surgery.

2. Whether routine and normal patient records of other mortalities in pediatric heart surgery cases, redacted to preserve patient identity, unprivileged business records as opposed to privileged medical peer review or hospital committee records.

■ However, the Hospitals suggest the issues necessary for our decision are, first, if a judge must make a preliminary finding that the required information is relevant to an anti-competitive action before defeating the peer reviews privilege, does the peer review privilege survive where:

(a) the party requesting the discovery fails to request the judge to make a preliminary finding of relevance; and

(b) the party seeking discovery fails to present any evidence to allow the judge to make a preliminary finding of relevance.

The Hospitals cast the second issue as consisting of the following two questions:

(a) Does a party seeking discovery of medical records compiled as a part of the peer review process admit that they are peer review privileged by failing to object to an affidavit and asserting that they are records kept in the ordinary course of business?

(b) Can a person discover medical records associated with a peer review process if the source of discovery is the peer review committee or any other entity or individual included within the peer review protections?

Although it might be questionable from a perusal of Ching's suggested issues alone, when they are considered together with those suggested by the Hospitals, it becomes apparent that the parties have joined issue upon the extent of, and exceptions to, the Texas medical peer review

privilege.[1] This is particularly true, in view of the fact that, if not decided in this proceeding, the question will be again presented. Thus, in the interest of judicial economy, we will consider the question.

■■■ Mandamus is an extraordinary writ that should only be issued when the trial court clearly abused its discretion and there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* at 839. Even so, this standard has different applications in different circumstances. With respect to the resolution of factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. In that circumstance, the reviewing court may not disturb the trial court's judgment unless it is shown to be arbitrary and unreasonable. *Id.*

■■■ On the other hand, the review of a trial court's determination of the legal principles controlling its ruling is much less deferential. *Id.* A trial court has no "discretion" in determining what the law is or in applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion and may result in appellate reversal by extraordinary writ. *Id.* In this case, we must decide whether the trial court correctly applied the law concerning medical peer review privilege. Accordingly, we give the trial court order little deference. *See Oyster Creek Fin. Corp. v. Richwood Invest. II*, 957 S.W.2d 640, 647 (Tex.App.—Amarillo 1997, pet. denied).

■■■ Medical peer review bodies, their reports and privileges are discussed in Chapter 160 of the Texas Occupations Code.Tex.Occ.Code §§ 160.001 *et seq.* (Vernon Pamph.2000) (the Code). Section 160.007 of the Code states the general rule that proceedings, records, and communications to a medical peer review committee are confidential and privileged (the peer review privilege). However, section 160.007(b) of the Code provides an exception to that general rule. That subsection reads:

> If a judge makes a preliminary finding that a proceeding or record of a medical peer review committee or a communication made to the committee is relevant to an anticompetitive action, or to a civil rights proceeding brought under 42 U.S.C. Section 1983, the proceeding, record, or communication is not confidential to the extent it is considered relevant.

Parenthetically, as the parties know, Texas Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Like the peer review privilege, the records and proceedings of a medical committee are confidential and not subject to subpoena (the hospital committee privilege). *See* Tex.Health & Safety Code § 161.032(a) (Vernon Supp.2000). The Hospitals asserted both privileges in response to Ching's discovery requests.

Ching argues that he is entitled to the evidence requested because he has alleged a cause of action under the Texas Antitrust Act for an unlawful "contract, combination or conspiracy" in restraint of trade in which the Hospitals are engaged with certain other doctors to reduce competition by ensuring that he could not perform his specialty in the hospitals best equipped to handle such surgery. For example, he says, he expects the evidence he seeks to show that there were other deaths of pediatric heart surgery patients at the Hos-

---

1. Although references are made to the peer review privilege, as we later note, the Hospitals also assert the Hospital Committee privilege, which is similar in nature to the peer review privilege. The discussion is pertinent to both privileges.

pitals involving less complicated cases than his, yet nothing was done respecting the other surgeons' privileges. He also says he believes the evidence will show that some of the deaths involved surgeons associated with "a very influential heart surgery firm whom he contends was a co-conspirator with Defendants."

■ Rule of Civil Procedure 193.4 provides that in instances in which a party has asserted a privilege, any party at any reasonable time may request a hearing on the claim of privilege. The party asserting the privilege then must produce any evidence, which may be by testimony or affidavits, to support the claim. If the court determines that an in-camera review is necessary, the evidence is segregated and produced for inspection in a sealed wrapper. To the extent the court sustains the objection or claim, the objecting party has no further duty to produce. If the objection or claim is overruled, the objecting party must then produce the requested material. Tex. R.Civ.P. 193.4. *See Chamberlain v. Cherry*, 818 S.W.2d 201, 204 (Tex.App.—Amarillo 1991, orig. proceeding).

At the October 1999 hearing giving rise to this proceeding, the Hospitals presented the affidavit of Linda Russell, the Medical Staff Affairs Coordinator for the Lubbock Methodist Hospital System. In that affidavit, Russell averred that the discovery matters with which we are concerned fell within the purview of the peer review and hospital committee privileges. Ching made no objection to the receipt of the affidavit and tendered no evidence at the hearing.

In contending that Ching is not entitled to mandamus relief, the Hospitals assert that Ching failed to request, and obtain, a ruling from the trial judge on the preliminary question of relevance of the material to his anti-competitive claims. In support, the Hospitals note that in a October 9, 1998 hearing, counsel asked the trial court to "have a bona fide discovery hearing to which the parties present evidence to support various findings the Court has to

make as to whether these specific kinds of discovery I'm asking for are relevant." However, the Hospitals argue that in Ching's second motion to compel, and during the October 27, 1999 hearing giving rise to this proceeding, Ching failed to ask the trial court to make a preliminary finding of relevance of the material to his anti-competitive claims. Emphasizing the proposition that a party seeking discovery who does not request and secure a ruling on the objections or assertions of privilege waives discovery, the Hospitals conclude that Ching has no ruling on which to predicate this mandamus proceeding.

Determination of this challenge requires us to examine the reporter's record of the October 27, 1999 hearing included in Ching's petition. Obviously, that record cannot be set out in detail and our references to it must be succinct. Examination of that record reveals that in Ching's opening argument, he refers to his "very broad discovery motion" which, he reasons, presents two kinds of issues; namely, those in which the Hospitals asserted a privilege and the other "broader array of documents" to which the Hospitals have objected on the ground of relevance. He then proceeded into a rather extensive discussion of his two theories of antitrust violations, which he hopes the evidence he seeks will buttress. Those two theories are combination and restraint of trade to deprive Ching of his privileges and "monopolization." He then goes on at some length to explain why he thinks the evidence sought is relevant to those questions.

The Hospitals responded that "they (Ching) come before you again today in connection with the statute that says that some peer review information is discoverable if the judge makes a preliminary finding that such proceedings, records, and communications are relevant to an anti-competitive action." Counsel then went on to refer to the rather extensive pretrial discovery that had already taken place and referred to the response motion he filed

asking for a ruling on objections to discovery and claims of privilege. The affidavit of Russell was tendered into evidence to show the material requested was "peer review documents."

After additional argument and citation of authorities, the trial court announced its ruling as "Counsel, with regard to the request for motion to compel the peer review matters, the court is of the opinion that those matters are not discoverable and will not allow the requested motion to compel these matters." This ruling in much the same language was later reduced to writing. Suffice it to say that although Ching may not have asked for a preliminary ruling on relevance in so many words, the record shows that the attorneys and the trial court understood that Ching was seeking a ruling as to the relevance of the peer review proceedings and, in making its ruling, the court was denying a request for a preliminary ruling that those proceedings were relevant. This ruling also implied a determination by the trial court that an in-camera review of the material pursuant to Rule 193.4 was not necessary.

The Hospitals also argue that even assuming that Ching made a sufficient request for a preliminary finding relevance, he had the burden of putting on evidence to support such a finding and, because he did not do so, was not entitled to a preliminary relevance ruling.

There is a paucity of relevant authority as to whether a party seeking a preliminary relevancy ruling is required to put on evidence to support such a preliminary finding. Observing that the statute gives no help in that regard, the gist of Ching's argument is that the court must make its decision based on the allegations made in the pleadings of the party seeking the discovery. Supporting that position, he points out that it is impossible to make a preliminary showing of relevance without knowing what the evidence actually is and that he can only argue what he expects the evidence to show and its relevance in terms of the action pled.

In response, the Hospitals assert that if an applicant is not required to make a preliminary showing of necessity by the production of evidence, then trial judges would not need to make any preliminary findings at all, because a trial judge "would automatically allow the discovery upon a review of the pleadings, thus making the words 'preliminary finding' useless." We disagree.

In *Irving Healthcare System v. Brooks,* 927 S.W.2d 12 (Tex.1996), our supreme court considered the peer review privilege and explained that:

> The overarching purpose of the statute is to foster a free, frank exchange among medical professionals about the professional competence of their peers. The Legislature recognized the chilling effect that would be engendered by enfeebling confidentiality.
>
> The Legislature has drawn a careful balance between the competing policy considerations of ensuring confidentiality for effective peer review and the scope of discovery in suits bringing legally cognizable claims.

*Id.* at 17. In balancing these factors, the legislature has recognized the importance of evidence which otherwise would be privileged in some anti-competitive and civil rights actions. However, by requiring the preliminary finding of relevance, the legislature sought to prevent "fishing" expeditions and the abuse, and eventual emasculation of, the limited exception to the peer review privilege. This is the danger of gauging the entitlement to a preliminary finding of relevance merely upon pleading and conclusory allegations. On the other hand, a blanket requirement that the party seeking the preliminary finding must bear the burden of presenting evidence to show how the material sought is relevant, without having any idea exactly what that material might be, would be extremely difficult. In many cases, such a showing would be virtually impossible, thereby negating the obvious intent of the legislature

to restrict the privilege in limited instances.

██ Applying the procedure set out in Rule 193.4(a) to the standards set out in Section 160.007(b) of the Code establishes a framework for resolving disputes of this type while balancing the competing considerations discussed above. Where the objecting party establishes a privilege under the Code, a party seeking the benefit of the exception in Section 160.007(b) must make a preliminary showing that the information sought has some arguable relevance. If pertinent testimony on the relevance of the material sought is not available, this preliminary showing may be made by examination of the pleading allegations, an averment that the evidence is not available from any other source, and how it may be relevant.

██ Rule 193.4(a) grants a trial court discretion to conduct an in-camera review of some or all of the disputed material. It is the rule that a trial court abuses its discretion in refusing to conduct an in-camera inspection when such review is critical to evaluation of a privilege claim. *See Arkla, Inc. v. Harris,* 846 S.W.2d 623, 631 (Tex.App.—Houston [14th Dist.] 1993, no writ). Evaluation of an exception to a claim of privilege should be treated no differently. When a preliminary showing of relevance is made, a trial court abuses its discretion in failing to conduct an in-camera review. If, after that review, the judge determines the material is relevant, it would be furnished to the other party. If he determines it is not relevant, it should be sealed, not revealed to the other party, and preserved for later inspection by an appellate court in the event of an appeal.

██ The last issue which Ching presents, and which we must discuss, is whether patient records of other mortalities in pediatric heart surgery cases, redacted to preserve patient identity, are unprivileged business records or whether they are privileged medical peer review or hospital committee records. In Russell's affidavit, she asserts that material requested falls within the peer review and hospital committee privileges. Ching, on the other hand, contends that they are "business" or "administrative" records of the Hospitals.

██ Without an examination of such material, we cannot make a definitive ruling upon this question. Even so, we point to the explication in *Irving Healthcare* as instructive. In that opinion, the court wrote: "routine business records of a health-care entity such as a patient's medical records do not become privileged and are not shielded from discovery simply because a medical peer review committee reviewed or considered them." *Irving Healthcare,* 927 S.W.2d at 18.

We grant Ching's petition for mandamus to the extent that the trial court is directed to order the discovery material sought in Ching's second motion to compel to be submitted to him at a time and place designated by him for an in-camera inspection to determine their relevance to Ching's anti-competitive action. Any such material which the trial court determines is not relevant shall not be revealed to Ching, but will be sealed and preserved for inspection by an appellate court in the event of an appeal of the underlying suit.