**In re EXXONMOBIL CORPORATION, Relator.**

**No. 14–02–00779–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 31, 2003.

David J. Beck, S. Jack Balagia, Jr., Houston, Shannon H. Ratliff, William T. George, Austin, for Relator.

Adrian W. Smith, Baytown, Grady Click, Austin, for State.

Panel consists of Justices YATES, EDELMAN and SEYMORE.

## OPINION

CHARLES SEYMORE, Justice.

In this original proceeding, relator, ExxonMobil Corporation, seeks a writ of mandamus ordering the respondent, the Honorable Tracy Christopher, to vacate three orders, dated July 15, 17, and 25, 2002, insofar as they require production of twelve specified documents.[1] We conditionally grant the writ.

---

1. Specifically, relator seeks a mandamus to require the respondent to vacate her orders

## Facts

In the underlying lawsuit, the State of Texas claims entitlement to a share of oil and gas produced from the Hawkins Field in Wood County, Texas. The State sought discovery, and relator claimed attorney-client privilege, with respect to a number of documents responsive to the State's request. The State filed a motion to compel the production of all documents listed on relator's privilege log and documents responsive to the State's request for production of documents in connection with the deposition notices of relator's corporate representatives and certain attorneys from McGinnis, Lochridge & Kilgore ("ML & K"), relator's outside counsel. Relator objected and the trial court held a hearing on July 2–3, 2002. Relator presented testimony of Clay Barton, an attorney from ML & K, and of two of relator's former in-house attorneys. The State presented no evidence.

After the hearing, the trial court conducted an in camera inspection and issued her first order on July 11, 2002, compelling relator to produce approximately 94 documents. Two subsequent orders, Order Nos. 2 and 3, issued on July 15 and 17, 2002, respectively, required the production of approximately 211 documents. Relator complied with the July 11th order, but requested reconsideration as to 14 of the documents ordered produced in Order Nos. 2 and 3. On July 25th, the trial court issued Order No. 6[2] in response to relator's motion for reconsideration, and in this order required the production of 12 documents and specified the bases for or-

dering production of each document. Order No. 6 stated that, if a mandamus was filed within five days of the issuance of the order, the proceeding was stayed.

## Availability of Mandamus Relief

 Mandamus relief is available if the trial court clearly abuses its discretion, either in resolving factual issues or in determining legal principles when there is no other adequate remedy at law. *See Walker v. Packer*, 827 S.W.2d 833, 838 (Tex. 1992). A trial court clearly abuses its discretion if "it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). To show the trial court clearly abused its discretion in the resolution of factual issues, the relator must show the trial court could reasonably have reached only one decision. *Id.* To show the trial court clearly abused its discretion in a determination of legal principles, the relator must show the trial court clearly failed to analyze or apply the law correctly. *Walker*, 827 S.W.2d at 840.

 The relator must also show that it has no other adequate remedy. *Id.* A remedy by appeal is not inadequate merely because the party may incur more expense and delay than in obtaining the writ. *Id.* at 842. The appellate remedy may be inadequate when the appellate court cannot cure the trial court's discovery order, such as where the trial court orders disclosure of privileged documents. *Id.* at 843. If, as relator claims, the trial court improperly ordered production of privileged docu-

---

with respect to documents with the following Bates Stamp numbers: ETX990006109–6110, ETX990007443–7444, ETX990009760, ETX990008729–8731, ETX990009427–9428, ETX990009431, ETX990009432, ETX990009465–9484, ETX990009433–9434, 9506–9541, ETX990009772–9773,

ETX9900010709, and ETX9900010819–10858. In the text of this opinion, we will refer to these documents by the last 4–5 digits of the first page of each document.

**2.** Orders 4 and 5 are not challenged in this proceeding.

ments, relator has no adequate remedy by appeal.

## Attorney–Client Privilege

 The attorney-client privilege protects from disclosure confidential communications between a client and its attorney "made for the purpose of facilitating the rendition of legal services to the client...." TEX.R. EVID. 503(b)(1). *See also Huie v. DeShazo*, 922 S.W.2d 920, 922 (Tex.1996). The party resisting discovery bears the burden of proving any applicable privilege. *Id.* at 926. To make a prima facie showing of the applicability of a privilege, a party must plead the particular privilege, produce evidence to support the privilege through affidavits or testimony, and produce the documents for an *in camera* inspection, if the trial court determines review is necessary. *In re Valero Energy Corp.*, 973 S.W.2d 453, 457 (Tex.App.-Houston [14th Dist.] 1998, orig. proceeding).

## 1. Production of Factual Matter

Relator asserts that the court abused its discretion in ordering production of redacted versions of documents 6109,[3] 7443, 9760, and 8729.[4] The trial court's order allows the production of certain factual information within those documents. Relator claims this ruling is an abuse of discretion because factual information in a privileged document is also covered by the privilege.

### a. Document 7443

 Order No. 6 requires production of a portion of document 7443, as follows:

Document number 7443–7444 does contain legal advice but it also outlines facts as to the ownership interests of the acreage under Highway 80 and how Exxon from a factual basis credited or did not credit the acreage. Exxon cannot shield these facts through the attorney client privilege. If there are other non privileged documents that outline the facts in this document then Exxon needs to show those documents to the court before it will reconsider its ruling.

 Because the trial court only ordered production of certain factual matter within this document, the trial court impliedly found the remainder of the document to be privileged. The attorney-client privilege, however, attaches to the complete communication between attorney and client, including both legal advice and factual information. *Huie*, 922 S.W.2d at 923; *Valero*, 973 S.W.2d at 457. In addition to these authorities, a panel of this court has ruled that, if a document is a confidential communication, the privilege extends to the entire document and not merely to the portion of the document containing legal advice, opinions, or analysis. *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, 425 (Tex.App.-Houston [14th Dist.] 1993, orig. proceeding). The *Caldwell* court supported this holding with the following reasoning:

It is inconceivable that an attorney could give sound legal advice on a client's case if he or she did not include an application of the law or opinion to the specific facts of that case. If we were to hold that all or part of a document containing privileged information should be dis-

---

**3.** We disagree with relator as to document 6109. The trial court's Order No. 6, of July 25, 2002, requires production of this document on the ground of waiver, not because it contains factual matters. Thus, we address document 6109 in a later section of this opinion concerning waiver.

**4.** These references are to the Bates number of the first page of documents, whether they consist of one or multiple pages.

closed because it also included facts pertinent to the lawsuit, the purpose of the attorney-client and work-product privileges would be annihilated. The ultimate effect of such a holding would be that clients would be reluctant to give their attorneys any factual information for fear that it would be subject to discovery. And no attorney could even begin to prepare a case for trial, or be able to give sound advice for lack of those facts. Such a chilling intervention into the attorney-client relationship under the guise of "looking for facts," pierces the core of a critical privilege to carve out limited and usually superfluous morsels of discovery otherwise obtainable. In our opinion, the cost is too great.

*Id.* (emphasis in original; citations omitted). *See also Keene Corp. v. Caldwell,* 840 S.W.2d 715, 719–20 (Tex.App.-Houston [14th Dist.] 1992, orig. proceeding)(also holding that privilege attaches not only to legal advice but to the complete communication, including factual recitations).

Factual information may be obtained by means other than the required production of privileged documents. For example, in *Huie v. DeShazo,* the supreme court held that confidential attorney-client communications are shielded from discovery and that this privilege extends to the entire communication, including the facts contained therein; however, the court added that the parties seeking the documents could obtain the information in another way, by deposition or by questioning the other party or its attorney regarding factual matters. 922 S.W.2d at 922–23.

 In response to relator's argument, the State does not address the trial court's decision to require partial production of document 7443. Instead, the State argues that we may uphold the trial court's ruling either on the ground that the entire document is not privileged or on the ground that relator waived its claim of privilege as to this document. In raising these grounds, the State cites to case law providing that an appellate court must uphold the trial court's order on any ground supported by the record. *In re Stevens,* 971 S.W.2d 757, 760 (Tex.App.-Beaumont 1998, orig. proceeding).[5]

Because the State raises grounds that support production of the entire document and the trial court only ordered production of part of the document, we find that the grounds raised by the State do not support the trial court's ruling.[6] The State's asserted grounds, either that the entire document was not privileged or that the privilege was waived, might be considered grounds supporting the trial court's ruling if the trial court had ordered production of the entire document, but this is not what the trial court ordered. As to document 7443, the trial court only ordered production of certain factual matter contained in the document, based on a finding that this

---

**5.** "A trial court cannot abuse its discretion if it reaches the right result for the wrong reasons." *Luxenberg v. Marshall,* 835 S.W.2d 136, 141–42 (Tex.App.-Dallas 1992, orig. proceeding). Thus, in a mandamus proceeding, the appellate court must focus on the result reached by the trial court rather than the reasons stated in the order. *Id.* at 142.

**6.** We acknowledge the State's grounds would support the trial court's ruling in Order No. 2. Before entering Order No. 6, the trial court entered Order No. 2, in which it ordered document 7443, among many other documents, produced in their entirety. Because the trial court changed its ruling as to document 7443 in the subsequent Order No. 6, after relator moved for reconsideration, we find that Order No. 6 supersedes Order No. 2 as to document 7443. Accordingly, we do not address the grounds for production referenced in Order No. 2. We focus only on the grounds set out in Order No. 6.

factual matter was not privileged. By denying production of the remainder of the document, the trial court implicitly found the remainder of the document to be privileged.

Although the State ostensibly seeks to uphold the trial court's ruling, the grounds it raises, that the entire document is not privileged or that the privilege was waived, actually serve to challenge the trial court's implicit finding of privilege as to part of the document because the State's grounds support production of the *entire* document. Were we to address the State's grounds, we would be considering not only the factual portion of the document which the trial court ordered produced, but also the remainder of the document, for which the trial court denied production, implicitly finding this remaining information privileged.

Because the State is not the party that filed the petition for writ of mandamus, it is inappropriate for this court to consider grounds that challenge the trial court's ruling unless these grounds are raised by the relator. Although the State may have raised these grounds only with the intent to support the ruling requiring production of factual matter, and not to challenge the implied ruling denying production of the remainder of the document, it is impossible to address the State's grounds without addressing the unchallenged portion of the ruling that denies production of part of document 7443. Accordingly, we do not address the State's grounds that document 7443 was not privileged or that relator waived its privilege as to document 7443.

Having reviewed and found document 7443 to be privileged, we conclude that the trial court abused its discretion in ordering it produced as redacted. The State may obtain any facts concerning ownership interests and how relator credited acreage by deposing witnesses concerning these facts without invading the attorney-client privilege. The court further stated in its order that, if relator could produce other non-privileged documents with the same factual information, the court would reconsider its ruling. While other non-privileged documents with the same facts would be one way to provide the factual information, testimony of witnesses is an alternative means for obtaining this information. Therefore, even if relator does not have non-privileged documents with the factual information found in document 7443, invasion of the attorney-client privilege is not warranted or required.

### b. Document 9760

 Order No. 6 also requires production of a portion of document 9760 because it contains a witness statement. The order allows redaction of all but the third paragraph, which the court characterizes as "a witness statement because it recounts a conversation between Chas. Ehrhardt [an Exxon employee] and Lloyd Merrick with the Railroad Commission."

Rule 192.3(h) allows parties to "obtain discovery of the statement of any person with knowledge of relevant facts—a 'witness statement'—regardless of when the statement was made." TEX.R. CIV. P. 192.3(h). Although this rule appears to be broad in application, the comment to the rule states: "Elimination of the 'witness statement' exemption does not render all witness statements automatically discoverable but subjects them to the same rules concerning the scope of discovery and privileges applicable to other documents or tangible things." *Id.* at comment 9.

In construing this rule, the Fort Worth Court of Appeals held that, where a witness statement is included in a confidential communication between attorney and client, the privilege protects the entire document. *See In re Fontenot,* 13 S.W.3d

111, 114 (Tex.App.-Fort Worth 2000, orig. proceeding). The court found that the real party in interest's broad interpretation of the witness-statement rule would render all witness statements discoverable and would effectively abrogate the attorney-client privilege. *Id.* The court added that the real party in interest could still obtain discovery of the facts known to the relator without invading the protection afforded by the attorney-client privilege. *Id.*

Because the court ordered redaction of document 9760 except for the portion of the document containing the alleged witness statement, the court impliedly found that the bulk of document 9760 was privileged. Thus, the issue before us, as raised in the petition, is whether the trial court abused its discretion in ordering the production of part of a privileged document merely because that part contained a witness statement. As held in *Fontenot,* a witness statement contained within a confidential communication between attorney and client is privileged and protected from discovery. 13 S.W.3d at 114. The State can obtain information concerning conversations with the witnesses by means other than invading the privilege. *See id.*

In its response, the State does not focus on the particular ground stated in Order No. 6 for the production of document 9760. Instead, the State argues that relator did not prove this document was intended to be kept confidential. Alternatively, the State argues relator did not disprove waiver of the privilege.

As we held in our discussion about document 7443, we find the State's arguments here do not address the trial court's decision to require partial production of document 9760. Instead, the State argues that we may uphold the trial court's ruling either on the ground that the entire document is not privileged or on the ground that relator did not disprove waiver of its

claim of privilege as to this document. As we discussed at length regarding document 7443, *see* discussion *supra* pp. 358–60, the State's arguments, which support production of the entire document, do not support the trial court's order of partial production of document 9760. It is impossible to address the State's grounds without addressing the trial court's implicit finding that most of document 9760 is privileged. Because the State is not the relator and does not challenge the trial court's ruling, we are unable to address the State's grounds.

Having implicitly found document 9760 to be privileged, except for the alleged witness statement, the trial court failed to follow case law holding that witness statements contained within a confidential communication between attorney and client are privileged. Accordingly, we find the trial court abused its discretion in ordering production of a redacted version of document 9760.

### c. Document 8729

 In Order No. 6, the trial court allows redaction of part of document 8729, but orders production of the remainder, stating that "the court considers the bulk of the document to be a witness statement because it recounts a conversation with Sandra Buch of the Railroad Commission." Document 8729 is a letter from Exxon's outside counsel to an Exxon employee. It recounts the attorney's discussion with a Railroad Commission examiner and a memorandum is attached.

The State does not address the ground provided in the court's most recent order, Order No. 6, but instead points to the trial court's prior order of July 17th, Order No. 3, in which the court states that another document no. 8728–8731 and its duplicate 9750–9753 "includes a letter from a lawyer, which is in reality a witness statement,

rather than legal advice and then it becomes the policy of the company." The State claims that the privilege does not apply to this document because the attorney was not acting in the capacity of an attorney, but was instead acting as a business advisor, setting relator's business policy.

We have previously found that Order No 6 supersedes Order No. 3, and thus, we do not address the grounds for production of document 8729 in Order No. 3. Therefore, we do not address the State's argument based on Order No. 3.

■■■ Because Order No. 6 required redaction of part of document 8729, the court impliedly found that at least part of the document was privileged. If the document is even partially covered by the attorney-client privilege, the entire document is protected. *Valero Energy Corp.*, 973 S.W.2d at 457 (privilege attaches to complete communication between attorney and client, including not only legal advice but also factual information).

The instant document is written by outside counsel for relator and contains legal analysis concerning the attorney's discussion with a Railroad Commission examiner. Accordingly, we find, as the trial court impliedly found, that part of the document contains information that is protected by the attorney-client privilege. Because part of the document is covered by the attorney-client privilege, the entire document is protected. *Valero Energy Corp.*, 973 S.W.2d at 457. Thus, we find the trial court abused its discretion in ordering the production of part of document 8729.

### d. Document number 10819

■■■ Document 10819 is a communication from an Exxon employee to an Exxon attorney, but is copied to ten other Exxon employees. In Order No. 6, the trial court requires production of a portion of docu-

ment number 10819 based on the trial court's finding that this document was sent to ten Exxon employees in addition to an Exxon lawyer. The trial court adds that it stands by its original order that the only privileged part of the document was in the last two paragraphs on the second page (10820).

A review of the document reveals that it is a request for legal advice based on factual matters presented. The trial court impliedly found that a portion of the document was privileged, *i.e.*, the last two paragraphs on the second page. Production of all but the last two paragraphs indicates the trial court found that the factual portion of the memo was not privileged.

The State claims that there is no proof that the Exxon employees who received copies of this document were representatives of the client and thus, there is no proof the document was intended to be a confidential communication between attorney and client. Again, the State presents arguments that would not support upholding Order No. 6. As we held in our discussion about document 7443, the State's arguments here do not address the trial court's decision to require partial production of document 10819. Instead, the State argues that we may uphold the trial court's ruling either on the ground that the entire document is not privileged or the privilege was waived. As we discussed at length under the portion of this opinion regarding document 7443, *see* discussion *supra* pp. 358–60, the State's argument, which supports production of the entire document, does not support the trial court's order of partial production of document 10819. It is impossible to address the State's grounds without addressing the trial court's implicit finding that most of document 10819 is privileged. Because the State is not the relator and does not

challenge the trial court's ruling, we are unable to address the State's grounds.

The trial court only ordered production of the "witness statement" portion of document 10819. Therefore, the trial court impliedly found that the remainder of document 10819 was privileged. Thus, the issue is whether the trial court abused its discretion in ordering the production of part of a privileged document merely because that part contained a witness statement. As held in *Fontenot*, a witness statement contained within a confidential communication between attorney and client is privileged and protected from discovery. 13 S.W.3d at 114. We find the trial court abused its discretion in ordering the factual portion of an otherwise privileged document produced.

### 3. Waiver of the Privilege

In Order No. 6, the trial court found that relator had waived the privilege as to a number of documents. We address each document separately unless there are duplicates.

#### a. Document 6109 (and duplicates 9433 and 9772)

■ This document is a memo from an Exxon attorney to an Exxon employee. The trial court found waiver as to document 6109 because it "was placed in all lease files mentioned so that proper ownership could be determined." Documents 9433 and 9772 were found by the court to be duplicates of 6109, with the same basis for waiver. These documents are listed on relator's privilege log as title opinions.

As to document 6109 and its duplicates, relator claims the trial court abused its discretion in finding waiver because placement of these documents in all lease files did not constitute disclosure to third parties. Relator argues there is no evidence the lease files were shared with any third

parties. Relator suggests that the trial court may have mistakenly confused the concept of "lease files" with "lease maintenance opinions," which may have been shared with third parties working on relator's behalf.

The State argues in its response that there is evidence to support the trial court's order. The State points to some handwritten notes from a "Tyler Land Meeting" held in 1974, approximately one month after the date of the memo in question (6109 and its duplicates). These handwritten notes include the names of the persons who attended the meeting and indicates that H.M. Krause, the top Exxon person involved in the Hawkins field project, stated: "Team effort . . . Exxon—no secrets—all info in files available . . . one of most studied fields in world." Harry Hugly, a former Exxon landman, testified in his deposition that title opinions were made available to outside contractors hired by relator and, sometimes, to outside parties, such as leaseholders.

Two Exxon attorneys, who testified at the July 3rd hearing, disputed Hugly's assertion that title opinions were shared with outside parties. Willis James McAnelly, Jr., an attorney with ML & K, outside counsel for Exxon, testified that legal advice regarding the Hawkins field project was commonly shared with different groups of Exxon personnel, such as the land people and the business analysis group, because the Hawkins field was a large project requiring the efforts of many people in different departments of the company. McAnelly testified that a lease maintenance opinion would be circulated to the accounting department to advise them regarding the payment of royalties. Title opinions, prepared by lawyers, might be shared with land people to obtain curative information or to determine if the submitted information was sufficient to remove

the objection, so that the attorney could write a final title opinion that would approve title in Exxon. McAnelly testified that showing a title opinion to a leaseholder "would be rare and would not be encouraged." David Eckman, former in-house counsel for Exxon, testified that the intention was to preserve and maintain confidentiality of title opinions. Eckman testified that, although landmen had access to certain title opinions, they were expected to maintain confidentiality of the documents.

The record of the hearing contains no specific references to document 6109 or its duplicates. Thus, the court must have made its decision based on the in camera review of the documents and the general testimony concerning availability of title opinions to third parties. On the last page of document 6109, a handwritten notation says "copy placed in each file mentioned in par. 3." Although the lease files are actually mentioned in paragraph 4 and not paragraph 3, it is reasonable to presume that a copy of the memo was sent to each file discussed in the above-quoted sentence in paragraph 4 of the memo. On the second page of the trial court's order, the judge states that a duplicate of 6109, document 9433, has notations copying it to the "Tyler Land Section."

Rule of Evidence 511 states that a person upon whom the rules confer a privilege, such as the attorney-client privilege, waives the privilege if: "the person or a predecessor of the person while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter unless such disclosure itself is privileged...." TEX.R. EVID. 511(1). The issue is whether the placement of this memo and its duplicates into the "lease files" constituted voluntary disclosure of the document.

■ It was relator's burden to prove its claim of privilege with respect to this document and to prove that the privilege had not been waived by disclosure. *Jordan v. Court of Appeals*, 701 S.W.2d 644, 648–49 (Tex.1985). There was conflicting testimony concerning whether third parties were shown title opinions. Although there was testimony that title opinions were sometimes seen by outside landmen hired by Exxon to assist the attorneys develop title documentation, other witnesses testified that such disclosure did not waive the privilege because contract landmen were subject to confidentiality requirements. There was also testimony that leaseholders were occasionally shown title opinions, but other testimony indicated that title opinions were not shared with leaseholders; instead, lease opinions might have been shared with leaseholders. Relator presented no testimony concerning "lease files." This conflicting evidence raised a factual issue the trial court resolved. Resolution of factual issues or matters is committed to the trial court's discretion, and, as the reviewing court, we may not substitute our judgment for that of the trial court. *Walker*, 827 S.W.2d at 839. To obtain mandamus relief, relator had to establish that the trial court could reasonably have reached only one decision. *Id.* at 840. We find that relator did not establish that the trial court could reasonably have reached only the decision that no waiver occurred with respect to document 6109 and its duplicates. Accordingly, we find no abuse of discretion by the trial court in ordering production of document 6109, and its duplicates, documents 9433 and 9772.

**2. Documents 9427, 9431, 9432, and 9465**

■ Document 9427 is another memo from an Exxon attorney to an Exxon employee, concerning revisions to an exhibit

to the Unit Agreement. Document 9431 is a memo from an Exxon attorney to an Exxon employee, attaching originals of a draft agreement for the employee's review. The document states that, if the employee finds them satisfactory, he may distribute the agreement to the Working Interest Owners. The memo describes specific changes. Document 9432 is a duplicate of 9431. Document 9465 is also a duplicate of 9431, but it alone has the drafts of the agreements attached.

The pertinent portion of the order is as follows:

> There are several memos from David W. Eckman to H.M. Krause that are all claimed to be attorney client advice but they just [sic] ministerial changes to drafts that are shared with outside working interest owners or are title corrections which the court has concluded are not privileged. In many instances Eckman is making changes requested by outside companies who have all reviewed the drafts. Eckman instructs Krause to copy the revised exhibits to transmit to the other companies. These documents are: 9427–9428, 9431, 9465–9484, 9506–9541.

The trial court's statements apply to some, but not all of the documents. Document 9427 concerns an Exxon attorney's review and revisions to an exhibit to the Unit Agreement. The document is copied to two Exxon employees and another Exxon attorney. The State claims that this and the other transmittal memos concerning the unit agreement were shared with outside counsel or involved title corrections. A review of document 9427 reveals nothing to indicate that this document was shared with anyone other than Exxon employees and attorneys. Thus, we find no basis for finding that relator waived its privilege by disclosure of this document.

The trial judge offered an alternative basis for ordering production—that the documents are not privileged. Relator argues that a review of this document reveals its privileged nature. Indeed, the subject of document 9427 is communication between attorney and client, discussing an exhibit to the unit agreements. The review and recommendation of changes to contracts constitutes rendition of legal services. Thus, the trial court abused its discretion in ordering production of document 9427 either on the basis of waiver or on the ground that this document was not a confidential communication.

■ Documents 9431 (and its duplicate 9465), 9432 and 9433 are memos transmitting a draft of the Unit Agreement and Unit Operating Agreement. These memos are from an Exxon attorney to an Exxon employee for review and corrections. Relator argues that these transmittal memos are privileged and contain legal advice concerning the draft agreements. Although the documents indicate that, after approval, the final agreements are to be distributed to the working interest owners, the documents indicate that they are discussing drafts that have not yet been approved for distribution to outside parties. All of the documents refer to drafts because the text indicates that the Exxon attorney is still reviewing certain exhibits to the agreements. Although the trial judge offers an alternative basis for ordering production, that the documents are not privileged, they are communications between attorney and client, discussing drafts to the unit agreements. While the trial court stated that these documents contain merely ministerial changes, this is not a basis for denying privilege status to a document. The subject of the communication between attorney and client is not of concern when determining whether it is privileged. *See In re Carbo Ceramics, Inc.*, 81 S.W.3d 369,

374 (Tex.App.-Houston [14th Dist.] 2002, orig. proceeding). Furthermore, there is no indication that these documents were to be distributed to outside personnel. The documents indicate that future final drafts will be circulated to outside personnel, but they do not state that these drafts are to be circulated to outside personnel. Thus, to the extent the trial court ordered production of documents 9427, 9431, 9432, and 9465 on the ground they were not privileged, or that relator waived the privilege by distributing them to persons outside the company, the trial court abused its discretion.

### 3. Document 10709

 In Order No. 6, the trial court orders document number 10709 produced on the ground that document 10709 transmits Amoco's correspondence, requests a review of Amoco's comments, and contains no privileged matter. Thus, the court specifically found that document 10709 was not privileged.

The State argues that any privilege was waived because relator previously produced a duplicate of this document, which the State includes in its appendix. If relator has already produced the document and did not request return of the document, then relator cannot be heard to complain about the trial court's order as to document 10709. *See* TEX.R. EVID. 511(1)(waiver of privilege occurs when holder of privilege voluntarily discloses any significant part of the privileged matter). Relator responds that the document in the State's appendix is plainly not a duplicate, but we have compared the document in the State's appendix with document number 10709 and find it to be an exact duplicate. Because relator has already voluntarily produced a duplicate of

document 10709, we can find no abuse of discretion by the trial court in ordering the production of document 10709.

### Conclusion

We find no abuse of discretion in the trial court's order requiring production of document ETX9900010709, which is merely a duplicate of a document previously produced to the State without complaint. We further find no abuse of discretion in the ordering of production of documents ETX990006109–6110, ETX990009433–9434, and ETX990009772–9773 on the ground that relator had not met its burden of disproving waiver. However, we find the trial court did abuse its discretion in ordering production of documents with the following Bates numbers: ETX990007443–7444, ETX990009760, ETX990008729–8731, ETX990009427–9428, ETX990009431, ETX990009432, ETX990009465–9484, and ETX9900010819–10858, and we conditionally grant the writ of mandamus as to the portion of Order No.6 [7] that orders production of documents with the following Bates numbers: ETX990007443–7444, ETX990009760, ETX990008729–8731, ETX990009427–9428, ETX990009431, ETX990009432, ETX990009465–9484, and ETX9900010819–10858. We are confident the trial court will vacate the portions of Order No. 6 signed July 25, 2002, that compel production of documents ETX990007443–7444, ETX990009760, ETX990008729–8731, ETX990009427–9428, ETX990009431, ETX990009432, ETX990009465–9484, and ETX9900010819–10858. If the trial court fails to do so, the writ will issue.

---

**7.** Because we have found that Order No. 6 supersedes Order Nos. 2 and 3 as to the documents addressed in Order No. 6, we need not extend our conditional grant of mandamus relief to the prior orders.