Opinion issued June 10, 2010.
     











In The
Court of Appeals
For The
First District of Texas




NO. 01-09-00521-CV




IN RE KENNETH HIGBY, M.D., Relator




Original Proceeding on Petition for Writ of Mandamus




CONCURRING OPINION







          I concur only in the denial of the petition. By a petition for writ of mandamus,
relator, Kenneth Higby, M.D., challenges the trial court’s May 29, 2009 order
compelling him to respond to certain questions posed during his deposition. Higby
contends that the trial court’s order is erroneous because the deposition questions at
issue seek information that is the privileged record of a medical peer review
committee. Higby, a medical expert witness and a member of the American College
of Obstetrics and Gynecology (ACOG), argues that he is entitled to protection from
discovery of his communications to the ethics grievance committee of ACOG in this
defamation suit brought by a fellow ACOG member, the opposing expert witness in
a medical malpractice case, against whom Higby has filed a grievance with ACOG. 
This original proceeding thus presents a legal issue of first impression that is
dispositive of Higby’s right to a writ of mandamus, namely whether an ethics
grievance committee of a professional medical organization constitutes a “medical
peer review committee” under the laws of the State of Texas and, if so, whether the
medical peer review privilege applies to communications made to the committee by
a member of the organization in connection with a grievance filed against another
member.
          The majority refuses to address the legal issue squarely posed by this case on
the ground that there is not enough evidence in the record on which to base a legal
determination that the ethics review committee of a professional organization is not
a medical peer review committee as that term is defined in the Texas statutes and so
this Court cannot answer the question posed by the pleadings.  There is, however,
evidence in the record that clearly discloses both the type of professional organization
ACOG is and the organization and scope of the activities of its grievance committee;
there is no objection to this evidence; there is no dispute between the parties about
these facts; and the question whether the discovery sought by Higby is protected by
the medical peer review privilege is squarely before this Court and briefed by both
parties. Moreover, the petition for writ of mandamus and the appendix are verified
by the affidavit of the attorney for the relator. The affidavit states that “[t]he facts
stated in this Affidavit are within my personal knowledge and are true an correct”;
that “[a]ll statements of fact contained in the aforementioned Petition for Writ of
Mandamus are true and correct in all respects”; that “[a]ll documents contained with
the Relator’s Record of the Petition for Writ of Mandamus are true and correct
copies”; and that “[a]ll documents contained within the Appendix to the Petition for
Writ of Mandamus are true and correct copies.” The petition and appendix thus 
comply with the certification requirements in Texas Rule of Appellate Procedure
52.3, governing the form and contents of petitions for writ of mandamus. See Tex.
R. App. P. 52.3(j), (k). Therefore, I believe this Court is required by the Texas Rules
of Appellate Procedure to answer the legal question posed by the parties that is finally
dispositive of this mandamus proceeding. See Tex. R. App. P. 47.1 (“The court of
appeals must hand down a written opinion that is as brief as practicable but that
addresses every issue raised and necessary to final disposition of the appeal.”),
52.8(d) (providing that Rule 47 applies to order or opinion by court of appeals on
petition for writ of mandamus). Accordingly, I would address and answer the
question posed. 
          I would hold that Higby is not entitled to the protection of the medical peer
review privilege in this case, and I would deny the petition for writ of mandamus.
Background

          Higby and real party in interest, Bruce Halbridge, M.D., are physicians who
have repeatedly testified as expert witnesses. Both Higby and Halbridge are members
of ACOG, a professional organization of physicians specializing in healthcare for
women. According to ACOG’s literature,
[I]n 1951, ACOG became the specialty’s first enduring, nationwide,
democratic, professional membership organization. Based in
Washington, D.C., ACOG is a 501(c)(3) nonprofit organization with
more than 51,000 members and is the leading group of physicians in the
U.S. providing health care for women. Board certification in ob-gyn is
a requirement to become an ACOG Fellow, and more than 90% of
American board-certified ob-gyns are affiliated with ACOG. 
 
The College keeps its members informed about current medical care
standards and ACOG’s professional recommendations through the
publication of Committee Opinions, Practice Bulletins, and Technology
Assessments. ACOG also publishes Obstetrics & Gynecology, a
monthly peer-reviewed scientific journal, ACOG Clinical Review, and
ACOG Today, the official monthly newsletter.
ACOG adheres to a code of professional ethics that provides, in part,
Obstetrician-gynecologists, as members of the medical profession, have
ethical responsibilities not only to patients, but also to society, to other
health professionals and to themselves.
 
. . . .
 
All physicians are obligated to respond to evidence of questionable
conduct or unethical behavior by other physicians through appropriate
procedures established by the relevant organization. 
 
. . . .
 
The professional competence and conduct of obstetrician-gynecologists
are best examined by professional associations, hospital peer-review
committees, and state medical and licensing boards.
 
. . . .
 
The obstetrician-gynecologist should strive to address through the
appropriate procedures the status of those physicians who demonstrate
questionable competence, impairment, or unethical or illegal behavior. 
In addition, the obstetrician-gynecologist should cooperate with
appropriate authorities to prevent the continuation of such behavior.
 
          Members of ACOG who choose to offer expert testimony must sign an expert
witness affirmation that provides, “I will submit my testimony to peer review, if
requested by a professional organization to which I belong.” Additionally, ACOG
possesses a grievance committee. The committee’s members include “the current and
former College Vice Presidents and Assistant Secretaries, a former national Junior
Fellow officer, and a former district Chair or other experienced Fellow,” together
with fellows with expertise in various obstetric and gynecological specialties.
          According to ACOG,
The Grievance Committee receives, reviews and evaluates complaints
from a College Fellow regarding professional conduct by a College
Fellow that may violate the College’s Code of Professional Ethics. The
committee also pursues and reviews final state medical board actions
resulting from professional conduct inconsistent with the Bylaws,
including but not limited to serious state medical board actions such as
revocation of license and any state medical board disciplinary action
based on sexual misconduct. 
 
Hearing panels, composed of current or former committee members,
thoroughly assess such complaints and determine if a complaint should
be sustained and, if necessary, recommend disciplinary action to the
Executive Board. The committee makes recommendations to the
Executive Board regarding the grievance process and the scope of the
committee’s activities. Members of the committee may also act as a
hearing panel for applicants whose membership as a Fellow has been
denied by the College. 
 
A finding by the grievance committee of noncompliance with the Society’s Code of
Ethics may affect continuing membership in the society. 
          The “Grievance Committee Complaint Form” contains two sections besides the
identity of the complainant—one for information about the complaint and one for
information about allegations of unethical testimony. When a complaint is filed with
the ACOG grievance committee, the following steps are taken:
1.       The general counsel canvasses the members of the grievance
committee to ensure that there is no conflict of interest.
 
2.       The grievance committee reviews the complaint. It may
(1) determine that the matter is not appropriate for consideration
or (2) assign the complaint to a hearing panel.
 
3.       If the matter is referred to a hearing panel, the respondent is
notified of the complaint, the names of the potential hearing panel
members, and the materials considered by the grievance
committee. 
 
4.       The respondent may request an oral hearing and may submit
additional materials for the hearing panel’s consideration.
 
5.       If the respondent requests a hearing, the complainant and
respondent are both given notice and an opportunity to make a
thirty-minute presentation to the hearing panel.
 
6.       Following the hearing’s conclusion, the hearing panel determines
a finding: (1) that the complaint is not sustained and no further
action be taken; (2) that the complaint is not sustained and that a
letter of notice be sent to the respondent detailing reservations
about his behavior; or (3) that the complaint is sustained and the
respondent be issued a warning, censured, suspended or expelled
from the College.
          Halbridge and Higby were retained as experts by parties in a medical
malpractice lawsuit involving the delivery of an infant who was later found to have
a neurological injury (the Lange case). Halbridge, an obstetrician-gynecologist, was
retained by the family of the infant. Higby, a maternal-fetal medicine specialist, was
retained by one of the defendant obstetricians. Neither had provided medical care to
either the mother or the infant. Halbridge prepared several reports, two of which
were reviewed by Higby. 
          On January 22, 2008, Higby filed a complaint with ACOG’s grievance
committee contending that Halbridge had made false statements in his reports in the
Lange suit, had fabricated information in his reports, and had rendered opinions
outside of his area of expertise in violation of ACOG’s Code of Ethics. In August
2008, Halbridge sued Higby for defamatory statements made to ACOG in the
grievance proceeding. ACOG’s grievance committee abated its proceeding pending
the resolution of the lawsuit. During his deposition in the lawsuit filed by Halbridge,
Higby refused to answer all questions pertaining to his complaint to ACOG’s
grievance committee on the basis of the medical peer review privilege.


 Halbridge
moved to compel answers to the deposition questions. On May 29, 2009, the trial
court signed an order compelling Higby to respond to the requests for production
within five days. Higby filed this petition for writ of mandamus and moved to stay
proceedings in the trial court.
Standard of Review
Mandamus relief is available only to correct a “clear abuse of discretion” when
there is no adequate remedy by appeal. Walker v. Packer, 827 S.W.2d 833, 839 (Tex.
1992) (orig. proceeding). A clear abuse of discretion occurs when a trial court
“reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law.” Id. (quoting Johnson v. Fourth Court of Appeals, 700
S.W.2d 916, 917 (Tex. 1985) (orig. proceeding)). When reviewing factual issues, the
reviewing court may not substitute its judgment for that of the trial court. Id. at
839–40. “The party resisting discovery bears the burden of proving any applicable
privilege.” In re ExxonMobil Corp., 97 S.W.3d 353, 357 (Tex. App.—Houston [14th
Dist.] 2003, orig. proceeding). “To make a prima facie showing of the applicability
of a privilege, a party must plead the particular privilege, produce evidence to support
the privilege through affidavits or testimony, and produce the documents for an in
camera inspection, if the trial court determines review is necessary.” Id. “An
appellate court may not deal with disputed areas of fact in a mandamus proceeding.” 
West v. Solito, 563 S.W.2d 240, 245 (Tex. 1978). Even if the reviewing court would
have decided the issue differently, it cannot disturb the trial court’s decision unless
the decision is shown to be arbitrary and unreasonable. Walker, 827 S.W.2d at 840. 
Appellate review of a trial court’s determination of the legal principles
controlling its ruling is, however, much less deferential. Id.; In re Ching, 32 S.W.3d
306, 310 (Tex. App.—Amarillo 2000, orig. proceeding). A trial court has no
“discretion” in determining what the law is or in applying it to the facts. Walker, 827
S.W. 2d at 840; Ching, 32 S.W.3d at 310. A clear failure of the trial court to analyze
or apply the law correctly constitutes an abuse of discretion that may result in the
grant of an extraordinary writ. Walker, 827 S.W.2d at 839–40; Ching, 32 S.W.3d at
310. 
Mandamus is proper to protect information subject to the medical peer review
privilege. See Mem’l Hosp.–The Woodlands v. McCown, 927 S.W.2d 1, 12 (Tex.
1996) (orig. proceeding) (holding medical peer review privilege applies to medical
credentialing process). The functions and activities of a committee determine
whether it qualifies as a peer review committee entitled to privilege. McAllen
Methodist Hosp. v. Ramirez, 855 S.W.2d 195, 199 (Tex. App.—Corpus Christi 1993,
orig. proceeding). In deciding whether the trial court correctly applied the law
concerning the medical peer review privilege, the appellate courts give the trial
court’s order no deference. Ching, 32 S.W.3d at 310.
Medical Peer Review Privilege
          Higby contends that the ACOG grievance committee is a medical peer review
committee, and therefore the medical peer review privilege applies. Halbridge asserts
that it is not a medical peer review committee and that the privilege does not apply.
          The Health and Safety Code provides which entities may form a medical peer
review committee:
The governing body of a hospital, medical organization,
university medical school or health science center, health
maintenance organization, extended care facility, hospital district,
or hospital authority may form a medical peer review committee,
as defined by Section 151.002, Occupations Code, or a medical
committee, as defined by Section 161.031, to evaluate medical
and health care services. . . . 
 
Tex. Health & Safety Code Ann. § 161.0315(a) (Vernon 2010). It further
provides that “[t]he records and proceedings of a medical committee are
confidential and are not subject to court subpoena.” Id. § 161.032(a) (Vernon
2010); see In re Living Ctrs., Inc., 175 S.W.3d 253, 257 (Tex. 2005) (orig.
proceeding) (observing that, in determining applicability of privilege, court
“analyzed the records, proceedings, and communications language of the
medical committee privilege and the medical peer review committee privilege
under Health & Safety Code section 161.032”).
          Section 151.002 of the Occupations Code defines “medical peer review”
as:
the evaluation of medical and health care services, including
evaluation of the qualifications and professional conduct of
professional health care practitioners and of patient care provided
by those practitioners. The term includes evaluation of the:
 
          (A)    merits of a complaint relating to a health care
practitioner and a determination or recommendation
regarding the complaint;
 
          (B)    accuracy of a diagnosis;
 
          (C)    quality of the care provided by a health care
practitioner;
 
          (D)    report made to a medical peer review committee
concerning activities under the committee’s review
authority;
 
          (E)     report made by a medical peer review committee to
another committee or to the board as permitted or
required by law; and
 
          (F)     implementation of the duties of a medical peer
review committee by a member, agent, or employee
of the committee. 
Tex. Occ. Code Ann. § 151.002(a)(7) (Vernon Supp. 2009); see In re Living
Ctrs., 175 S.W.3d at 256.  
          A “medical peer review committee” is defined as:
 
[A] committee of a health care entity, the governing board of a
health care entity, or the medical staff of a health care entity, that
operates under written bylaws approved by the policy-making
body or the governing board of the health care entity and is
authorized to evaluate the quality of medical and health care
services or the competence of physicians, including evaluation of
the performance of those functions specified by Section 85.204,
Health and Safety Code.


 
 
Tex. Occ. Code Ann. § 151.002(a)(8); In re Living Ctrs., 175 S.W.3d at 256. 
          A “health care entity” is defined as:
 
(A)    a hospital licensed under Chapter 241 or 577 , Health and
Safety Code;
 
(B)    an entity, including a health maintenance organization,
group medical practice, nursing home, health science
center, university medical school, hospital district, hospital
authority, or other health care facility, that:
                    (i)      provides or pays for medical care or health
care services; and
                    (ii)     follows a formal peer review process to
further quality medical care or health care;
 
(C)    a professional society or association of physicians, or a
committee of such a society or association, that follows a
formal peer review process to further quality medical care
or health care; or
 
(D)    an organization established by a professional society or
association of physicians, hospitals, or both, that:
                    (i)      collects and verifies the authenticity of
documents and other information concerning
the qualifications, competence, or
performance of licensed health care
professionals; and
                    (ii)     acts as a health care facility’s agent under the
Health Care Quality Improvement Act of
1986 (42 U.S.C. Section 11101 et seq.). 
 
Tex. Occ. Code Ann. § 151.002(a)(5); see In re Living Ctrs., 175 S.W.3d at
256.
          The Occupations Code also provides:
Confidentiality Relating To Medical Peer Review Committee
 
(a)     Except as otherwise provided by this subtitle, each
proceeding or record of a medical peer review committee
is confidential, and any communication made to a medical
peer review committee is privileged.
 
          . . . .
 
(e)     Unless disclosure is required or authorized by law, a record
or determination of or a communication to a medical peer
review committee is not subject to subpoena or discovery
and is not admissible as evidence in any civil judicial or
administrative proceeding without waiver of the privilege
of confidentiality executed in writing by the committee. 
The evidentiary privileges created by this subtitle may be
invoked by a person or organization in a civil judicial or
administrative proceeding unless the person or
organization secures a waiver of the privilege executed in
writing by the chair, vice chair, or secretary of the affected
medical peer review committee. 
 
          . . . .
 
(g)     A person seeking access to privileged information must
plead and prove waiver of the privilege. 
 
Tex. Occ. Code Ann. § 160.007 (Vernon 2004); see Irving Healthcare Sys.
v. Brooks, 927 S.W.2d 12, 20 (Tex. 1996) (orig. proceeding) (“To the extent
that the documents and communications at issue in this case are ‘proceedings
and records of a medical peer review committee,’ they are confidential and not
subject to discovery . . . .”). “[A] person who, in good faith, reports or
furnishes information to a medical peer review committee or the [Texas
Medical Board]” is “immune from civil liability.” Tex. Occ. Code Ann. §§
151.002(a)(1), 160.010(a) (Vernon Supp. 2009). 
          The purpose of the medical peer review privilege is “to promote the
improvement of health care and the treatment of patients through review,
analysis, and evaluation of the work and procedures of various medical entities
and their personnel,” and “[t]he purpose of a medical peer review committee
is to evaluate medical services, the qualifications of practitioners, and the
quality of patient care given by those practitioners.” Family Med.—U.T. v.
Ramirez, 855 S.W.2d 200, 202–03 (Tex. App.—Corpus Christi 1993),
overruled on other grounds, Mem’l Hosp.–The Woodlands v. McCown, 927
S.W.2d 1 (Tex. 1996) (orig. proceeding). The purpose of medical peer review
is “protection of an evaluative process, not mere records.” In re Living Ctrs.,
175 S.W.3d at 258; cf. McCown, 927 S.W.2d at 3–5 (holding that “the
confidentiality provision of [the medical committee privilege] extends to initial
credentialing by medical committees”); Jordan v. Fourth Court of Appeals,
701 S.W.2d 644, 649 (Tex. 1985) (orig. proceeding) (holding that documents
“not shown to be ‘records and proceedings’ of a hospital committee” are
discoverable). The function a committee performs determines the protected
status of its activities. Ramirez, 855 S.W.2d. at 203. Thus, when the board of
a health care entity functions as a committee to evaluate the competence of the
physicians in its employ or in its programs, the information is privileged. Id. 
          The Texas Supreme Court has held that “the medical peer review
privilege will be strictly interpreted.” In re Living Ctrs., 175 S.W.3d at 258
(“While the medical privileges are important in promoting free discussion in
the evaluation of health care professional and health services, the right to
evidence is also important, and therefore privileges must be strictly
construed.”).  Thus, while a liberal interpretation of the terms “health care
entity” and “medical peer review” in section 151.002 of the Occupations Code
could encompass peer evaluation of grievances made by testifying experts,
section 151.002(a)(8) makes it clear that the medical peer review privilege is
intended to apply more narrowly, namely to the evaluation of patient care by
a committee “that operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized
to evaluate the quality of medical and health care services or the competence
of physicians.” Tex. Occ. Code Ann. § 151.002(a)(8); see also Tex. Occ.
Code Ann. §§ 151.002(a)(5) (defining “health care entity”), 151.002(a)(7)
(defining “medical peer review”). We are required both by the rules of
construction and by case law to read these provisions together. See Tex.
Gov’t Code Ann. § 311.021(2) (Vernon 2005) (providing presumption that
by enacting statute “the entire statute is intended to be effective”); In re Living
Ctrs., 175 S.W.3d at 258 (holding medical peer review privilege must be
strictly construed). 
          ACOG is not an organization authorized to form a medical peer review
committee by section 161.0315(a) of the Texas Health and Safety Code. See
Tex. Health & Safety Code Ann. § 161.0315(a). Nor is its grievance
committee organized “to evaluate medical and health care services” or the
competence of physicians for purposes of credentialing or employment. See
id. ACOG is not a professional society organized to evaluate patient care, and
review of a grievance made to ACOG’s grievance committee is not undertaken
for the purpose of evaluating a physician’s provision of patient care for
credentialing or employment. Rather, ACOG broadly requests that its
members report “evidence of questionable conduct or unethical behavior” by
other physicians. It thus “receives, reviews and evaluates complaints from a
College Fellow regarding professional conduct by a College Fellow that may
violate the College’s Code of Professional Ethics.” It “also pursues and
reviews final state medical board actions resulting from professional conduct
inconsistent with the Bylaws, including but not limited to serious state medical
board actions such as revocation of license and any state medical board
disciplinary action based on sexual misconduct” to “determine if a complaint
should be sustained and, if necessary, recommend disciplinary action to the
Executive Board.” Its members “may also act as a hearing panel for applicants
whose membership as a Fellow has been denied by the College.” And its
decisions may result in discipline or expulsion from the College.
          Nor does Higby’s grievance filed with the committee concern
Halbridge’s provision of care to a patient. Rather, it is undisputed that neither
he nor Halbridge had treated the parties in the underlying malpractice suit in
which both offered expert testimony, and Higby’s grievance concerns the
quality of his testimony. Thus, the ACOG grievance proceeding filed by
Higby does not fall within the limited scope of the medical peer review
privilege. See Tex. Occ. Code Ann. § 151.002(a)(8) (defining “medical peer
review committee”); In re Living Ctrs., 175 S.W.3d at 258 (holding medical
peer review privilege must be strictly construed). 
          Significantly, ACOG references peer review committees in its literature,
but nowhere in the records provided to this Court does ACOG describe its
grievance committee as a medical peer review committee. Instead, it clearly
references state medical board actions that evaluate a physician’s provision of
patient care for credentialing or employment purposes, “such as revocation of
license,” as distinct from any action of the ACOG grievance committee. It is
also noteworthy that ACOG states, “The professional competence and conduct
of obstetrician-gynecologists are best examined by professional associations,
hospital peer-review committees, and state medical and licensing boards.” 
(emphasis added). 
          Finally, I note that the Texas statutes treating the medical peer review
privilege do not expressly provide or reasonably imply that a medical peer
review committee may review the quality of a physician’s expert witness
testimony in a medical malpractice proceeding. Although I have found no
Texas case law directly on point, in Fullerton v. Florida Medical Ass’n, a
Florida appellate court made a similar observation of Florida statutes in
determining that the defendants in a defamation suit could not claim immunity
because their complaint to the Florida Medical Association concerned expert
testimony and not “the review of the professional conduct of a physician that
might affect his or her patient’s health.” 938 So. 2d 587, 594 (Fla.Dist. Ct.
App. 2006) (“Nothing in the provisions of the above statute, however,
expressly provides or reasonably implies the professional body is empowered
to review the quality of a physician’s testimony in a medical-malpractice
proceeding.”).


 
          For all of the foregoing reasons, I would decline to characterize ACOG’s
grievance committee as a medical peer review committee. I would also decline
to apply the medical peer review privilege to communications concerning
expert witness testimony not directly related to the care of a patient.



 
 
 
 
 
 
 
 
Conclusion
          I would hold that the discovery sought by Halbridge, the real party in
interest, is not protected by the medical peer review privilege. I would,
therefore, deny the mandamus relief sought by Higby, the relator. 
 
 
 
 
 
                                                                        Evelyn V. Keyes
                                                                        Justice
 
Panel consists of Justices Keyes, Sharp, and Massengale.
 
Justice Keyes, concurring.