**FAMILY MEDICAL CENTER, U.T., Relator,**

v.

**The Hon. Mario E. RAMIREZ, Jr., Judge, 332nd Judicial District Court of Hidalgo County, Texas, Respondent.**

**No. 13–93–039–CV.**

Court of Appeals of Texas, Corpus Christi.

May 27, 1993.

Rehearing Overruled June 17, 1993.

Richard M. Frankel, Richard B. Miller, Miller & Frankel, Houston.

Charles Sweetman, Sweetman & Wise, Harlingen.

Rosemary L. Hollan, Peter Kilpatrick, Foster, Lewis, Langley, Gardner & Banack, San Antonio.

Roberto D. Guerra, McAllen.

James DeAnda, Solar & Ellis, Houston.

Olga Brown, San Antonio.

Neil E. Norquest, McAllen.

Douglas M. Kennedy, Thomas F. Nye, Brin & Brin, P.C., Corpus Christi.

William E. Hornbuckle, San Antonio.

Before DORSEY, KENNEDY and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

Relator, Family Medical Center–UT, petitions for a writ of mandamus for protection of certain documents from discovery. It seeks to compel respondent, the Honorable Mario Ramirez, to grant a previously denied motion to quash or to conduct another *in camera* inspection of documents respondent determined were discoverable. Relator claims that various documents presented to the trial court *in camera* and available here for our review are privileged under the Medical Practice Act, Tex.Rev. Civ.Stat.Ann. art. 4495b (Vernon Supp. 1993), specifically that the documents sought are protected because they are related to a peer review committee's actions.

We granted relator's motion for leave to file petition for writ of mandamus together with similar motions of two other defendants in the same litigation.[1] The case below arose from injuries sustained by Daniel Cadena at birth. Maria Cadena, his mother, received prenatal care at the medical center from May 1984 until October 1984. She alleged negligence on the part of relator, the hospital, and doctors in failing to determine that she was carrying twins until after the first twin was born. The Cadenas allege that Daniel, the second-born twin, sustained serious irreparable injuries that were preventable. The Cadenas brought suit in 1991, claiming negligence on the part of all defendants. They alleged that 1) defendants Kling, Maynard, and Behal failed to properly diagnose, monitor, and treat Maria Cadena, 2) defendants Smith and Trevino failed to properly train and supervise the defendant resident trainees, and 3) relator, Family Medical Center–UT, was negligent in its selection, training, and supervision of the resident trainees

1. The following related opinions also issued on this date: *McAllen Methodist Hospital v. Ramirez*, 855 S.W.2d 195 (Tex.App.—Corpus Christi, 1993, orig. proceeding) and *Kling v. Ramirez*, 855 S.W.2d 204 (Tex.App.—Corpus Christi, 1993, orig. proceeding).

and knew or should have known that one or more of them was unfit and incompetent to care for Mrs. Cadena.

In June 1992, the Cadenas sent relator requests for production. Relator objected to the requests which sought all documents involving credentials, performance evaluations, or complaint files of the defendant doctors, all risk management records, all incident reports pertaining to the defendant doctors, and all documents pertaining to relator's affiliation with the University of Texas family practice program. Relator tendered, *in camera*, Exhibits A, B, C, D, and E, and filed the affidavits of Dr. Trevino and Dr. Paul to support the privilege. The trial court determined that the documents should be produced.

Relator's primary assertion in this proceeding is that the documents are privileged as communications of a medical peer review committee pursuant to the Medical Practice Act, Tex.Rev.Civ.Stat.Ann. art. 4495b (Vernon Supp.1993). The Act provides, in relevant part:

> Sec. 1.03 (6) "Medical peer review committee" or "professional review body" means a committee of a health care entity, *the governing board of a health care entity,* or the medical staff of a health care entity, provided the committee or medical staff operates pursuant to written bylaws that have been approved by the policy-making body or the governing board of the health-care entity and authorized to evaluate the quality of medical and health care services or the *competence of physicians.* (emphasis added).
> Sec. 5.06 (c) A report made under this section is confidential and not subject to disclosure under the open records law....
>
> > (g) Except as otherwise provided by this Act, *all* proceedings and records of a peer review committee are confidential, and *all* communications made to a medical peer review committee are privileged. (emphasis added).
> >
> > (j) Unless disclosure is required or authorized by law, records or determinations of or communications to a medical peer review committee are not sub-

ject to subpoena or discovery and are not admissible as evidence in any civil, judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee.... Any person seeking access to privileged information must plead and prove waiver of the privilege....

> (s)(3) In no event may records and reports disclosed pursuant to this article by the board to others, or reports and records received, maintained or developed by the board, by a member of a medical peer review committee, or by a member of such a committee, or by a health care entity be available for discovery or court subpoena or introduced into evidence in a medical professional liability suit arising out of the provision or failure to provide medical or health-care services, or in any other action for damages....

Tex.Rev.Civ.Stat.Ann. art. 4495b (Vernon Supp.1993).

■ The purpose of the privilege shielding peer review committee activities is to promote the improvement of health care and treatment of patients through review, analysis, and evaluation of the work and procedures of the various medical entities and the personnel who staff them. The formulation of committees to study and improve health care is a necessary part of that function.

■ We first determine if relator is an entity which may properly claim the privilege. The Medical Practice Act defines a health care entity as an entity, including a health maintenance organization, group medical practice, nursing home, health science center, university medical school, or other health care facility, that provides medical or health care services and that follows a formal peer review process for the purposes of furthering quality medical or health care. Tex.Rev.Civ.Stat.Ann. art. 4495(b) § 1.03(5)(B) (Vernon Supp.1993).

Dr. Juan J. Trevino averred in his affidavit that he is the director of the Family Practice Residency Program through the University of Texas Health Science Center,

and is the director of the Family Medical Center located in McAllen, Texas. The Family Practice Residency Program is a community-based residency program to help train physicians in the specialty of family practice. The residency program is administered by the Physicians Educational Foundation, a non-profit corporation, by contract with the University of Texas. The Physician's Educational Foundation established the Family Medical Center as a clinic to train residents and to provide them with patients as required by their curriculum.

The Board of Trustees of the Physicians Educational Foundation is relator's governing body and has exclusive authority to remove employees and acts as a committee in peer review and personnel matters.

As director, Trevino reported directly to the Board of Trustees and the Executive Committee and was responsible for the day-to-day review. He averred that he was an ex officio member of the board and attended all board meetings.

The trial court was also provided the affidavit of Dr. Leonard Paul. Dr. Paul averred that he was the Chairman of The Department of Family Practice for the University of Texas Health Science Center in San Antonio. He was required to be notified of peer review and personnel decisions which affect the status of the residents because of a contract which exists between the two entities.

The undisputed facts with regard to relator's status show that it is a health care entity within the meaning of the statute. Relator's governing board sometimes functions as a professional review body which evaluates the competence of those physicians who are in the residency program. Although Dr. Trevino assumed the responsibility to report to the board on the residents' status, Trevino stated in his affidavit that decisions regarding the employment status of the residents were made by the board.

■ The purpose of a medical peer review committee is to evaluate medical services, the qualifications of practitioners, and the quality of patient care given by those practitioners. Tex.Rev.Civ.Stat.Ann.

art. 4495b § 1.03(9) (Vernon Supp.1993). When the governing board of the foundation is fulfilling those functions, it is acting as a peer review committee under the statute even though the evaluation of the student-practitioners is necessarily part of the scholastic program. The goal of such committees is to enhance the quality of health care in the institution or program.

We now determine whether the exhibits tendered *in camera* to the trial court are privileged under article 4495b. Sections 5.06(g) and (j) of the Act exempt *all* proceedings, records, communications, and determinations of a peer review committee.

■ We have determined in a related case that the function which a committee is performing determines the protected status of its activities. *McAllen Methodist Hospital v. Ramirez*, 855 S.W.2d 195 (Tex. App.—Corpus Christi, 1993, orig. proceeding). In this case, if the Board is functioning as a committee to evaluate the competence of the physicians in its employ or in its programs, the documents are privileged. *See* Tex.Rev.Civ.Stat.Ann. art. 4495b § 1.03 (Vernon Supp.1993). If the information is initial credentialing information, such as applications and related matters or documents gathered in the regular course of business, the documents are not privileged for those reasons set forth in our opinion in *McAllen Methodist Hospital.* We will review the documents according to those standards.

Exhibit A contains documents maintained by the Physicians Educational Foundation in the residency program file which were either prepared by Dr. Trevino or sent to him. These documents are clearly privileged because they relate to physician evaluation in the program.

Exhibit B contains letters included in the residency program files which are inquiries from both the Texas State Board of Medical Examiners and the American Board of Family Practice and the responses to them from Dr. Trevino. None of the documents are peer review evaluations of physicians in the family residency program. These documents are not privileged.

Exhibit C contains letters included in the residency program file which are inquiries

from health care entities forwarded to, and written by, Dr. Trevino for purposes of providing information to credentialing committees of other institutions. For reasons stated in *McAllen Methodist Hospital,* these documents are not privileged, except for ·one letter dated November 29, 1990, from Dr. Trevino to Dr. Paul evaluating a resident. That letter is privileged.

Exhibits D and E contain college and medical school transcripts of Drs. Behal, Maynard, and Kling and their respective applications for graduate training. Relator does not assert any independent privilege for withholding these documents. The doctors' privacy grounds were not urged with respect to these documents. The trial court properly ordered their disclosure.

We therefore hold that the trial court was in error in ordering the disclosure of: 1) those documents in Exhibit A, and 2) the letter dated November 29, 1990, contained in Exhibit C. In all other respects, the trial court was correct.

■ Mandamus is clearly proper in this instance. *See Walker v. Packer,* 827 S.W.2d 833, 843 (Tex.1992). We trust the trial court will rescind its order compelling discovery of those documents in Exhibit A and the letter from Dr. Trevino to Dr. Paul dated November 29, 1990, in Exhibit C. Mandamus will issue only if the court refuses to comply.