938 So.2d 587 (2006)
DR. JOHN FULLERTON, Appellant,
v.
THE FLORIDA MEDICAL ASSOCIATION, INC., DR. JONATHAN B. WARACH, DR. PRAVINCHANDRA ZALA, and DR. JOSEPH O. KREBS, Appellees.
Case No. 1D05-0185, Case No. 1D05-3632.
District Court of Appeal of Florida, First District.
Opinion filed September 27, 2006.
James F. McKenzie of McKenzie, Taylor & Zaraur, P.A., Pensacola, and John Vail and Julie Schroeder of the Center for Constitutional Litigation, P.C., Washington, D.C., for Appellant.
Angela C. Flowers of Kubicki Draper, Miami, for Appellee The Florida Medical Association.
Robert V. Williams, and John A. Schifino of Williams, Schifino, Mangione & Steady, P.A., Tampa, for Appellees Dr. Jonathan B. Warach, Dr. Pravinchandra Zala, and Dr. Joseph O. Krebs.
Jon N. Ekdahl, Leonard A. Nelson, and Steve I. Ro of the American Medical Association, Chicago, Illinois; John D. Buchanan, Jr., of Henry, Buchanan, Hudson, Suber & Carter, P.A., Tallahassee, for Amicus Curiae American Medical Association.
Rebecca O'Dell Townsend of The Solomon Tropp Law Group, P.A., Tampa, for Amicus Curiae Washington Legal Foundation.

ON MOTIONS FOR REHEARING, CLARIFICATION, REHEARING EN BANC, OR CERTIFICATION
ERVIN, J.
Appellees seek rehearing, clarification, rehearing en banc, or certification of the court's decision in these consolidated appeals. We deny the motions for rehearing, rehearing en banc, and certification, but grant the motion for clarification. We withdraw the opinion filed July 11, 2006, and substitute the following modified opinion.
In these consolidated appeals, Dr. John Fullerton, a medical practitioner and an expert witness in a medical-malpractice action, appeals separate final judgments entered on prior orders granting the appellees' motions to dismiss Dr. Fullerton's amended complaints alleging counts in defamation, tortious interference with an advantageous business relationship, conspiracy through abuse of economic power, witness intimidation brought against all of the defendant/appellees, and a count against defendant/appellee Florida Medical Association (FMA), a professional peer-review association, for violation of Florida's RICO Act. Because we decide that the lower court erroneously concluded that section 766.101, Florida Statutes (2003), and the federal Health Care Quality Improvement Act, 42 U.S.C. §§ 11101-11152 (HCQIA), immunize the FMA and the individual defendant physicians from all liability, we reverse the final judgments of dismissal and remand the cases for further consistent proceedings.
Following Dr. Fullerton's testimony as an expert witness in a medical-malpractice action brought against doctors Jonathan B. Warach, Pravinchandra Zala, and Joseph O. Krebs (individual defendants and appellees in case no. 1D05-0185), which resulted in a judgment exonerating them from liability, they forwarded a letter to the FMA complaining of Dr. Fullerton's testimony, stating, among other things, that his opinion testimony fell below reasonable professional standards, that it was made "for the sole purpose of propagating a frivolous lawsuit for financial gain," and that he specifically "presented false testimony and false theories about stroke in the hope to prove negligent medical care in an 80-year-old diabetic with previous strokes who suffered a stroke despite appropriate care." Defendants concluded their letter with a request to the FMA to issue an opinion addressing whether Fullerton's testimony "fall[s] below standards," and, if so, to report its findings to the Board of Medicine for appropriate disciplinary action in order "to prevent the Medical profession from being terrorized by similar experts."
Following the publication of the letter, Dr. Fullerton filed his initial complaint with a copy of the letter attached, naming both the FMA and the individual physicians as defendants. He alleged that while he is licensed to practice medicine in California and Florida, he is not a member of the FMA; that he resides in California where he primarily practices his profession. He generally alleged that the statements in the letter were false and were submitted for processing by the FMA's Expert Witness Committee (EWC) of FMA's Council on Ethical and Judicial Affairs (CEJA), which was organized for the purpose "of intimidating, hindering, and deterring persons, including plaintiff Fullerton, from appearing as expert witnesses on behalf of plaintiffs in cases involving medical malpractice," thereby depriving injured plaintiffs of the ability to pursue medical-malpractice lawsuits. He continued that because of the actions of FMA and the defendant doctors, who acted in concert to inhibit expert testimony in medical-malpractice cases, he had suffered damages and would suffer irreparable harm to his reputation and to his capacity to earn income in the future if the defendant FMA's CEJA and EWC programs were permitted to continue their operations.
All of the defendants filed motions to dismiss, raising as grounds that the claims were barred by the Florida and federal immunity statutes. At the hearing conducted on the motions to dismiss, plaintiff's counsel argued that although the FMA is statutorily designated a professional-review committee, the immunity statutes were not designed to apply to expert-witness testimony; rather, they were enacted for the purpose of addressing the quality of health care provided by physicians in the treatment of their patients.
At the conclusion of the hearing, the court ruled that the statutory immunity privilege provided in both section 766.101 and the HCQIA barred the plaintiff's claims in the absence of allegations of intentional fraud. As a result, the court granted the motions to dismiss without prejudice in order for Dr. Fullerton to amend his complaint in an effort to state a cause of action for intentional fraud with the specificity required by Florida Rule of Civil Procedure 1.120(b).
Following plaintiff's election not to amend the complaint brought against the individual physicians, the trial court entered final judgment of dismissal with prejudice, and the appeal from same is designated as case number 1D05-0185. Plaintiff later filed an amended complaint against the defendant FMA, asserting essentially the same allegations and the same counts, resulting in the trial court's dismissal with prejudice of all counts except defamation, which the court dismissed without prejudice to allow him to amend by specifically alleging extrinsic evidence of intentional fraud. The court also dismissed the amended defamation complaint for the same reasons given for the dismissal of the prior complaints, and the appeal therefrom is styled case number 1D05-3632.
This court's review standard of a trial court's grant of a motion to dismiss is de novo. See Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 899 So. 2d 1222, 1227 (Fla. 1st DCA 2005). Moreover, because the lower court's dismissal orders depended primarily on its interpretation of the pertinent immunity statutes, our review standard of its legal construction is de novo. We find nothing in Florida's medical peer-review statutes reasonably supporting an interpretation that a peer-review committee is shielded from liability for an act taken by the committee on a claim that a physician's testimony in a medical-malpractice action fell below acceptable professional standards. The peer-review immunity statute, section 766.101(3)(a), provides in part:
There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any member of a duly appointed medical review committee, or any health care provider furnishing any information . . . for any act or proceeding undertaken or performed within the scope of the functions of any such committee if the committee member or health care provider acts without intentional fraud.
In rejecting a challenge that the statute violated Florida's constitutional access to courts provision, the state supreme court ruled that the statute did not have the effect of abolishing all causes of action that had previously existed before its enactment; rather, its provisions permitted "a defamation action against a committee member or health care provider when the plaintiff can establish extrinsic evidence of malice or fraud." Feldman v. Glucroft, 522 So. 2d 798, 800 (Fla. 1988). The statute was later described as "plac[ing] a burden on the plaintiff to plead extrinsic evidence before authorizing a lawsuit in which such evidence could be discovered." Dhaduvai v. Belsito, 663 So. 2d 1356, 1357 (Fla. 2d DCA 1995). The plaintiff meets the statutory burden by filing a complaint "contain[ing] allegations of extrinsic evidence of either a lack of good faith or intentional fraud." Id. at 1357, n. 2.
It is obvious that the lower court's interpretation of section 766.101(3)(a) in the case at bar was largely influenced by the above cases, which, however, did not involve a question of whether the statute's immunity provisions apply to expert-witness testimony in a medical-malpractice action. In our judgment, because neither Florida's peer-review statutes nor the HCQIA clearly and unambiguously expresses the legislative intent that such testimony should be scrutinized by peer review, we conclude the statutes provide no immunity to the defendants.
The parties do not dispute that the FMA EWC is a "committee of a state or local professional society of health care providers," as defined in section 766.101(1)(a)1.c, or that the term "health care providers" includes licensed physicians. See § 766.101(1)(b), Fla. Stat. Other pertinent provisions of the peer-review statute, however, offer little support to the lower court's application of immunity to the facts alleged. Florida's peer-review procedure was created for the purpose of "evaluat[ing] and improv[ing] the quality of health care rendered by providers of health service or . . . determin[ing] that health services rendered were professionally indicated or were performed in compliance with the applicable standard of care or that the cost of health care rendered was considered reasonable by the providers of professional health services in the area." § 766.101(1)(a), Fla. Stat.
Appellees argue that the submission of expert-witness testimony in medical-malpractice actions is a provision of health care by a health care provider. They point out that the preamble to chapter 73-50, Laws of Florida, which created the medical-review committee procedure, recited the need for establishing such committees "for the purpose of reviewing standards of care, utilization and expense in the rendering of health services in an effort to deter or eliminate some of the causes of the increased claims and costs of providing health services." Based on this language, the appellees contend that the review of an expert witness's medical testimony by a professional peer-review committee implements the legislative goal seeking the reduction of costs in the rendering of health services. They continue that unprofessional expert medical testimony threatens the quality of health care because if such testimony is not made subject to review, physicians are frequently pressured into performing unnecessary procedures that drive up the cost of health care, and subject patients to unnecessary and potentially dangerous treatments for the purpose of guarding against baseless malpractice claims. As a result, they assert that an assessment by a board-certified peer-review committee of the quality of an expert's opinion serves to promote the legislative goal of improving the quality of health care.
If such was indeed one of the purposes leading to the act's adoption, the legislature failed to express its intention with the clarity one would reasonably expect it to use in bringing about such a substantial change to the privilege traditionally accorded witness testimony. Although a medical-review procedure that subjects the substandard practice of physicians to peer review is unquestionably remedial legislation and entitled to a liberal construction, cf. De Bowes v. De Bowes, 7 So. 2d 4 (Fla. 1942), a broad construction should not be accorded if its effect is to confer powers not expressly or reasonably implied in the statute's provisions. See Becker v. Amos, 141 So. 136 (Fla. 1932).
Moreover, if the statute were construed in the manner appellees advocate, such construction would ignore one of the cardinal tenets of statutory interpretation, requiring that statutes enacted in derogation of rights established by the common law be given a narrow, not a liberal construction. The common law has long recognized that an absolute civil privilege extends to a witness's testimony in connection with or in the course of an existing judicial proceeding. See Ange v. State, 123 So. 916, 917 (Fla. 1929); Stucchio v. Tincher, 726 So. 2d 372, 375 (Fla. 5th DCA 1999). As noted in Fariello v. Gavin, 873 So. 2d 1243, 1245 (Fla. 5th DCA 2004): "By virtue of this immunity, defamatory statements made in the course of judicial proceedings by parties, witnesses and counsel are absolutely privileged, no matter how false or malicious those statements might be, provided the statements are relevant to the subject of the inquiry." The consequence of the rule is that "[t]orts such as perjury, libel, slander, and other actions based on statements made in connection with a judicial proceeding are not actionable." Id. Thus, a statute which conflicts with a rule of common law is required to be construed strictly, with the result that no change in the common law can be said to be legislatively intended unless the statute speaks plainly in such regard or cannot otherwise be given effect. See McGhee v. Volusia County, 679 So. 2d 729, 731 (Fla. 1996).
We find no clear legislative expression that the testimonial privilege long accorded to witnesses was intended to be modified by the language of section 766.101, which was expressly created for the purpose of evaluating and improving the quality of health care rendered by providers of health service. The term "render" is defined, among other things, as doing a service for another. Merriam-Webster's Collegiate Dictionary 990 (10th ed. 1998). A physician who renders a medical service is ordinarily considered to be providing medical care to his or her patient. This conclusion becomes even more evident when one considers the provisions of section 766.101 in connection with those of section 458.305(3), Florida Statutes (2003), which defines the practice of medicine as the "diagnosis, treatment, operation, or prescription for any human disease, pain, injury, deformity, or other physical or mental condition."
Based upon our examination of all pertinent provisions of the statute, we agree with appellant that it fails to immunize the FMA from liability when that body acts to evaluate the testimony of a medical expert given in a medical-malpractice action.
We also agree that the HCQIA, 42 U.S.C. §§ 11101-11152, provides no immunity to the FMA in its role as an examiner of the quality of a non-member physician's judicial testimony. In 1986, Congress created the HCQIA for the purpose of improving the "quality of medical care by restricting the ability of physicians who have been found to be incompetent from repeating this malpractice by moving from state to state without discovery of such finding." Imperial v. Suburban Hosp. Ass'n, Inc., 37 F.3d 1026, 1028 (4th Cir. 1994).
Congress made the following findings supporting its enactment of the HCQIA: (1) The increasing occurrence of medical malpractice and the need to improve the quality of medical care have become nationwide problems that warrant greater efforts than those that can be undertaken by any individual State.
(2) There is a national need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance.
(3) This nationwide problem can be remedied through effective professional peer review.
(4) The threat of private money damage liability under Federal laws, including treble damage liability under Federal antitrust law, unreasonably discourages physicians from participating in effective professional peer review.
(5) There is an overriding national need to provide incentive and protection for physicians engaging in effective professional peer review.
42 U.S.C. § 11101. In order to carry out the findings expressed, professional review bodies were created, and both they and those providing information to them were accorded immunity from liability and damages under any law of the United States or any state, with the exception only where the health-care provider knowingly provided false information. 42 U.S.C. § 11111. Section 11111(a)(1) provides in pertinent part:
Limitation on damages for professional review actions
If a professional review action (as defined in section 11151(9) of this title) of a professional review body meets all the standards specified in section 11112(a) of this title, except as provided in subsection (b)[1] of this section 
(A) the professional review body,
(B) any person acting as a member or staff to the body,
(C) any person under a contract or other formal agreement with the body, and
(D) any person who participates with or assists the body with respect to the action, shall not be liable in damages under any of the United States or of any State (or political subdivision thereof) with respect to the action. . . .
A reading of the above provisions clearly reveals two essential requisites must be met in order for a professional-review body to be entitled to the immunity authorized: (1) the body must be engaged in a professional-review action as defined in section 11151(9), and (2) it must meet all of the standards set out in section 11112(a). The only standard applicable to the issue before us is the first stated therein, requiring that the peer review be taken "in the reasonable belief that the action was in the furtherance of quality health care." 42 U.S.C. § 11112(a)(1). The narrow question we must address is whether the HCQIA can be reasonably construed as authorizing peer review of a physician's testimony given in a medical-malpractice action for the purpose of furthering the quality of health care. In our judgment, it cannot. This conclusion is made evident by the language of section 11151(9), defining professional-review action as
an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action. . . .
(Emphasis added.)
It appears from our examination of the above statutes that the term professional-review action, as it relates to a formal decision of a review body to take or not take action, encompasses the review of the professional conduct of a physician that might affect his or her patient's health, with the result that his or her right to clinical privileges or membership in a professional society could be impacted. Nothing in the provisions of the above statute, however, expressly or reasonably implies the professional body is empowered to review the quality of a physician's testimony in a medical-malpractice proceeding.
In so concluding, we are not unaware that the Seventh Circuit Court of Appeals in Austin v. American Association of Neurological Surgeons, 253 F.3d 967 (7th Cir. 2001), indicated in dicta that a professional-review body was authorized by the HCQIA to assess the quality of a physician's testimony given in a medical-malpractice action. In Austin, a neurosurgeon was suspended from membership in the American Association of Neurological Surgeons, and he filed an action for damages and injunctive relief against the association, alleging that the suspension was in retaliation for his having testified as an expert witness for the plaintiff in a medical-malpractice action brought against another neurosurgeon, also a member of the Association. The Seventh Circuit affirmed the trial court's entry of summary judgment against the neurosurgeon, and it concluded with the following observations:
We note finally that there is a strong national interest, which we doubt not that Illinois would embrace, in identifying and sanctioning poor-quality physicians and thereby improving the quality of health care. Although Dr. Austin did not treat the malpractice plaintiff for whom he testified, his testimony at her trial was a type of medical service and if the quality of his testimony reflected the quality of his medical judgment, he is probably a poor physician. His discipline by the Association therefore served an important public policy exemplified by the federal Health Care Quality Improvement Act, 42 U.S.C. §§ 11101 et seq., which encourages hospitals to conduct professional review of its staff members and report malpractice to a federal database. As an inducement to the vigorous performance of this reporting function, the Act immunizes hospitals from liability for disciplinary actions they take against staff physicians, provided only that the hospital is acting in good faith. See 42 U.S.C. §§ 11101, 11111, 11112.
Id. at 974.
Although we take issue with the Seventh Circuit's comments in Austin, implying that the HCQIA's provisions include the authorization of a professional body's review of the quality of a physician's testimony in a malpractice action, we note several distinguishing facts in Austin from those at bar, the most notable being that Dr. Fullerton, unlike Dr. Austin, was not a member of the professional association that entertained a complaint to discipline him. Therefore, even if the statutes could be interpreted as permitting peer review of a member physician's malpractice testimony, the FMA had no cause under the circumstances to subject Dr. Fullerton to its discipline.
Accordingly, we reverse the final judgments of dismissal. Our decision in this case is predicated solely on the determination that the trial court's primary reason for dismissal was the erroneous conclusion that the immunity provisions of section 766.101, Florida Statutes (2003), and the federal HCQIA bar appellant's claims against the FMA and the individual defendant physicians. We express no opinion regarding the sufficiency of the counts of the amended complaint to state a cause of action, and the parties are free to pursue these matters on remand.
REVERSED and REMANDED.
KAHN, C.J., and VAN NORTWICK, J., CONCUR.
NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED.
NOTES
[1] The exception provided in subsection (b) is irrelevant to the resolution of the issue before us in that it involves the failure of a health care entity to report required information  facts that are not alleged in the instant case.