In re Kenneth HIGBY, M.D., Relator.

No. 01–09–00521–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 2010.

Erin E. Lunceford, Melissa Astala Khan, Sprott, Rigby, Newsom, Robbins, Lunceford & Bell, P.C., Joel Randal Sprott, Munisteri, Sprott, Rigby, Newsom & Robbins, P.C., Houston, TX, for Appellant.

Chris Di Ferrante, Houston, TX, Richard L. Tate, Tate and Associates, Richmond, TX, for Appellee.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

**OPINION**

MICHAEL MASSENGALE, Justice.

This is a mandamus proceeding arising from a pretrial discovery dispute.* The underlying suit involves a defamation claim asserted by the plaintiff and real party in interest, Dr. Bruce Halbridge, against defendant and relator Dr. Kenneth Higby. Dr. Halbridge's claim is based upon statements allegedly made by Dr. Higby in an ethics complaint submitted to the grievance committee of the American College of Obstetricians and Gynecologists (ACOG).

Dr. Higby was deposed concerning his communications with the ACOG grievance committee, and he declined to answer certain questions, asserting a medical peer review communications privilege. *See* TEX. OCC.CODE ANN. § 160.007(e) (Vernon 2004). Dr. Halbridge moved to compel Dr. Hig-

---

* The underlying case is *Bruce L. Halbridge, M.D. v. Kenneth Higby, M.D.*, No. 08–DCV–166064, in the 268th District Court of Fort Bend County, Texas, the Hon. Brady G. Elliott, presiding.

by's responses, and the trial court granted the motion to compel.

Generally, the scope of discovery is within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex.1998) (orig.proceeding); *In re BP Prods. N. Am. Inc.*, 263 S.W.3d 106, 111 (Tex.App.-Houston [1st Dist.] 2006, orig. proceeding). Mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). The heavy burden of establishing a clear abuse of discretion is on the party resisting discovery. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex.2003) (orig.proceeding) (citing *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex.1994) (orig.proceeding)). A clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Walker*, 827 S.W.2d at 839 (citing *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding)). Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless the decision is shown to be arbitrary and unreasonable. *Walker*, 827 S.W.2d at 840. Mandamus is proper when a trial court improperly denies a claim of medical peer review privilege. *See, e.g., Mem'l Hosp.-The Woodlands v. McCown*, 927 S.W.2d 1, 12 (Tex.1996) (orig.proceeding).

As the party seeking to avoid discovery, Dr. Higby bore the burden to assert and prove that the medical peer review communications privilege applies. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex.2004) (orig.proceeding); *In re BP Prods.*, 263 S.W.3d at 112. In order to make a prima facie demonstration of privilege at the hearing on Dr. Halbridge's motion to compel, Dr. Higby was required to "present any evidence necessary to support the ... privilege either by testimony at the hearing or by affidavits served on opposing parties at least seven days before the hearing." TEX.R. CIV. P. 199.6.

The source of the privilege asserted by Dr. Higby is Occupations Code section 160.007(e):

> Unless disclosure is required or authorized by law, a record or determination of or a *communication to a medical peer review committee* is not subject to subpoena or discovery and is not admissible as evidence in any civil judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee. The evidentiary privileges created by this subtitle may be invoked by a person or organization in a civil judicial or administrative proceeding unless the person or organization secures a waiver of the privilege executed in writing by the chair, vice chair, or secretary of the affected medical peer review committee.

TEX. OCC.CODE § 160.007(e) (emphasis supplied). To enforce his claim of privilege under this statute, Dr. Higby had to prove that the ACOG grievance committee was a "medical peer review committee." *Id.* To prove that, he had to prove that ACOG was a "health care entity," and that it "operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians." *Id.* § 151.002(a)(8) (Vernon Supp.2009) (defining "medical peer review committee" for purposes of Medical Practice Act, TEX. OCC.CODE ANN. §§ 151.001–165.160 (Vernon 2004 & Supp. 2009)). To prove that ACOG was a "health care entity," he had to prove that ACOG or its grievance committee followed "a formal peer review process to further

quality medical care or health care." *Id.* § 151.002(a)(5)(C) (Vernon Supp.2009) (defining "health care entity" for purposes of Medical Practice Act).

■ Dr. Higby bore the burden of proving the application of the privilege in the trial court, and in this mandamus proceeding he bears the burden of demonstrating a clear abuse of discretion by the trial court. Nevertheless, the mandamus record before us contains no proof of any of the predicate facts that would establish whether a privilege applies. Dr. Higby's response to the motion to compel was not verified. No testimony was presented at the hearing on the motion to compel. *See* TEX.R. CIV. P. 199.6. Dr. Higby did submit a one-page affidavit, which stated, in its entirety:

> My name is Kenneth Higby, M.D. I am an obstetrician/gynecologist practicing in San Antonio, Texas. I have been licensed to practice medicine in Texas since 1991. This affidavit is based on my personal knowledge and is true and correct.
>
> All of the statements made by me to the ACOG Grievance Committee, either in writing or orally, were based on my good faith belief in the truth of those statements. My statements were substantiated by the documents produced and prepared in the Lange case.
>
> As a practicing obstetrician and gynecologist in Texas, I have an interest in upholding the standards of medical care in my profession.
>
> As a fellow of the American College of Obstetricians and Gynecologists, I have a duty to report questionable behavior by another physician. *I am bound by the ACOG Code of Ethics*, which states "all physicians are required to respond to evidence of questionable conduct or unethical behavior by other physicians

> through appropriate procedures established by the relevant organization."
>
> My statements were made only to the members of the Grievance Committee who have an interest in regulating the fellows of the ACOG.

(Emphasis in original.) This affidavit does not address any of the facts necessary to establish whether the ACOG grievance committee was a "medical peer review committee," as explained above. Also attached to the response to the motion to compel was a copy of ACOG's Code of Professional Ethics, but no affidavit was provided to prove the substance of the Code, and in any case the Code did not prove that the ACOG grievance committee was a "medical peer review committee."

The only other documents referenced by Dr. Higby's mandamus petition in support of his contention that the ACOG grievance committee was a "medical peer review committee" are the exhibits to his motion for summary judgment, which was orally withdrawn at the hearing on Dr. Halbridge's motion to compel. Even if we were to assume that in granting the motion to compel the trial court considered the exhibits to a withdrawn motion for summary judgment, which included additional information about ACOG's mission and its grievance committee (but no copy of any written bylaws), the matters reflected in these documents were not proved by an affidavit or testimony of any person with knowledge. *See* TEX.R. CIV. P. 199.6.

By contrast, in *Memorial Hospital–The Woodlands v. McCown*, 927 S.W.2d 1 (Tex. 1996), the Supreme Court relied upon a mandamus record which included affidavits of medical staff coordinators with personal knowledge who provided evidence of the structures of hospital credentialing committees at issue, including the bylaws under which such committees had been

formed. *Id.* at 11. In addition to establishing the facts necessary to demonstrate eligibility for a communications privilege, the affidavits also established predicate facts to demonstrate the specific application of the privilege to the documents at issue. *Id.* at 12. No such evidentiary record has been provided to us in support of this petition.

■ An appellate court may not deal with disputed areas of fact in an original mandamus proceeding. *West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978). Faced with a record devoid of the necessary proof to establish whether a privilege applies, we cannot conclude that the trial court clearly abused its discretion by granting the motion to compel. We express no opinion on whether the ACOG grievance committee served as a "medical peer review committee" for the purposes of Occupations Code section 160.007(e). *See, e.g., VanDevender v. Woods,* 222 S.W.3d 430, 433 (Tex.2007) (noting "the cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more" (quoting *PDK Labs., Inc. v. U.S. Drug Enforcement Admin.,* 362 F.3d 786, 799 (D.C.Cir.2004) (Roberts, J., concurring))).

We deny the petition for writ of mandamus, and we vacate this Court's order of June 16, 2009, which stayed the trial court's order granting Dr. Halbridge's motion to compel.

Justice KEYES, concurring.

EVELYN V. KEYES, Justice, concurring.[1]

I concur only in the denial of the petition. By a petition for writ of mandamus, relator, Kenneth Higby, M.D., challenges the trial court's May 29, 2009 order compelling him to respond to certain questions posed during his deposition. Higby contends that the trial court's order is erroneous because the deposition questions at issue seek information that is the privileged record of a medical peer review committee. Higby, a medical expert witness and a member of the American College of Obstetrics and Gynecology (ACOG), argues that he is entitled to protection from discovery of his communications to the ethics grievance committee of ACOG in this defamation suit brought by a fellow ACOG member, the opposing expert witness in a medical malpractice case, against whom Higby has filed a grievance with ACOG. This original proceeding thus presents a legal issue of first impression that is dispositive of Higby's right to a writ of mandamus, namely whether an ethics grievance committee of a professional medical organization constitutes a "medical peer review committee" under the laws of the State of Texas and, if so, whether the medical peer review privilege applies to communications made to the committee by a member of the organization in connection with a grievance filed against another member.

The majority refuses to address the legal issue squarely posed by this case on the ground that there is not enough evidence in the record on which to base a legal determination that the ethics review committee of a professional organization is not a medical peer review committee as that term is defined in the Texas statutes and so this Court cannot answer the question posed by the pleadings. There is, however, evidence in the record that clearly discloses both the type of professional organization ACOG is and the organization and scope of the activities of its grievance

1. The underlying case is *Bruce L. Halbridge, M.D. v. Kenneth Higby, M.D.,* No. 08–DCV–166064, in the 268th District Court of Fort Bend County, Texas, the Hon. Brady G. Elliott, presiding.

committee; there is no objection to this evidence; there is no dispute between the parties about these facts; and the question whether the discovery sought by Higby is protected by the medical peer review privilege is squarely before this Court and briefed by both parties. Moreover, the petition for writ of mandamus and the appendix are verified by the affidavit of the attorney for the relator. The affidavit states that "[t]he facts stated in this Affidavit are within my personal knowledge and are true an correct"; that "[a]ll statements of fact contained in the aforementioned Petition for Writ of Mandamus are true and correct in all respects"; that "[a]ll documents contained with the Relator's Record of the Petition for Writ of Mandamus are true and correct copies"; and that "[a]ll documents contained within the Appendix to the Petition for Writ of Mandamus are true and correct copies." The petition and appendix thus comply with the certification requirements in Texas Rule of Appellate Procedure 52.3, governing the form and contents of petitions for writ of mandamus. *See* TEX.R.APP. P. 52.3(j), (k). Therefore, I believe this Court is required by the Texas Rules of Appellate Procedure to answer the legal question posed by the parties that is finally dispositive of this mandamus proceeding. *See* TEX.R.APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."), 52.8(d) (providing that Rule 47 applies to order or opinion by court of appeals on petition for writ of mandamus). Accordingly, I would address and answer the question posed.

I would hold that Higby is not entitled to the protection of the medical peer review privilege in this case, and I would deny the petition for writ of mandamus.

## Background

Higby and real party in interest, Bruce Halbridge, M.D., are physicians who have repeatedly testified as expert witnesses. Both Higby and Halbridge are members of ACOG, a professional organization of physicians specializing in healthcare for women. According to ACOG's literature,

> [I]n 1951, ACOG became the specialty's first enduring, nationwide, democratic, professional membership organization. Based in Washington, D.C., ACOG is a 501(c)(3) nonprofit organization with more than 51,000 members and is the leading group of physicians in the U.S. providing health care for women. Board certification in ob-gyn is a requirement to become an ACOG Fellow, and more than 90% of American board-certified ob-gyns are affiliated with ACOG.

> The College keeps its members informed about current medical care standards and ACOG's professional recommendations through the publication of Committee Opinions, Practice Bulletins, and Technology Assessments. ACOG also publishes *Obstetrics & Gynecology*, a monthly peer-reviewed scientific journal, *ACOG Clinical Review,* and *ACOG Today,* the official monthly newsletter.

ACOG adheres to a code of professional ethics that provides, in part,

> Obstetrician-gynecologists, as members of the medical profession, have ethical responsibilities not only to patients, but also to society, to other health professionals and to themselves.

> . . . .

> All physicians are obligated to respond to evidence of questionable conduct or unethical behavior by other physicians through appropriate procedures established by the relevant organization.

> . . . .

The professional competence and conduct of obstetrician-gynecologists are best examined by professional associations, hospital peer-review committees, and state medical and licensing boards.

. . . .

The obstetrician-gynecologist should strive to address through the appropriate procedures the status of those physicians who demonstrate questionable competence, impairment, or unethical or illegal behavior. In addition, the obstetrician-gynecologist should cooperate with appropriate authorities to prevent the continuation of such behavior.

Members of ACOG who choose to offer expert testimony must sign an expert witness affirmation that provides, "I will submit my testimony to peer review, if requested by a professional organization to which I belong." Additionally, ACOG possesses a grievance committee. The committee's members include "the current and former College Vice Presidents and Assistant Secretaries, a former national Junior Fellow officer, and a former district Chair or other experienced Fellow," together with fellows with expertise in various obstetric and gynecological specialties.

According to ACOG,

The Grievance Committee receives, reviews and evaluates complaints from a College Fellow regarding professional conduct by a College Fellow that may violate the College's Code of Professional Ethics. The committee also pursues and reviews final state medical board actions resulting from professional conduct inconsistent with the Bylaws, including but not limited to serious state medical board actions such as revocation of license and any state medical board disciplinary action based on sexual misconduct.

Hearing panels, composed of current or former committee members, thoroughly assess such complaints and determine if a complaint should be sustained and, if necessary, recommend disciplinary action to the Executive Board. The committee makes recommendations to the Executive Board regarding the grievance process and the scope of the committee's activities. Members of the committee may also act as a hearing panel for applicants whose membership as a Fellow has been denied by the College.

A finding by the grievance committee of noncompliance with the Society's Code of Ethics may affect continuing membership in the society.

The "Grievance Committee Complaint Form" contains two sections besides the identity of the complainant—one for information about the complaint and one for information about allegations of unethical testimony. When a complaint is filed with the ACOG grievance committee, the following steps are taken:

1. The general counsel canvasses the members of the grievance committee to ensure that there is no conflict of interest.

2. The grievance committee reviews the complaint. It may (1) determine that the matter is not appropriate for consideration or (2) assign the complaint to a hearing panel.

3. If the matter is referred to a hearing panel, the respondent is notified of the complaint, the names of the potential hearing panel members, and the materials considered by the grievance committee.

4. The respondent may request an oral hearing and may submit additional materials for the hearing panel's consideration.

5. If the respondent requests a hearing, the complainant and respondent

are both given notice and an opportunity to make a thirty-minute presentation to the hearing panel.

6. Following the hearing's conclusion, the hearing panel determines a finding: (1) that the complaint is not sustained and no further action be taken; (2) that the complaint is not sustained and that a letter of notice be sent to the respondent detailing reservations about his behavior; or (3) that the complaint is sustained and the respondent be issued a warning, censured, suspended or expelled from the College.

Halbridge and Higby were retained as experts by parties in a medical malpractice lawsuit involving the delivery of an infant who was later found to have a neurological injury (the *Lange* case). Halbridge, an obstetrician-gynecologist, was retained by the family of the infant. Higby, a maternal-fetal medicine specialist, was retained by one of the defendant obstetricians. Neither had provided medical care to either the mother or the infant. Halbridge prepared several reports, two of which were reviewed by Higby.

On January 22, 2008, Higby filed a complaint with ACOG's grievance committee contending that Halbridge had made false statements in his reports in the *Lange* suit, had fabricated information in his reports, and had rendered opinions outside of his area of expertise in violation of ACOG's Code of Ethics. In August 2008, Halbridge sued Higby for defamatory statements made to ACOG in the grievance proceeding. ACOG's grievance committee abated its proceeding pending the resolution of the lawsuit. During his deposition in the lawsuit filed by Halbridge, Higby refused to answer all questions pertaining to his complaint to ACOG's grievance committee on the basis of the medical peer review privilege.[2] Halbridge moved to compel answers to the deposition questions. On May 29, 2009, the trial court signed an order compelling Higby to respond to the requests for production within five days. Higby filed this petition for writ of mandamus and moved to stay proceedings in the trial court.

## Standard of Review

Mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding). A clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985) (orig.proceeding)). When reviewing factual issues, the reviewing court may not substitute its judgment for that of the trial court. *Id.* at 839–40. "The party resisting discovery bears the burden of proving any applicable privilege." *In re ExxonMobil Corp.*, 97 S.W.3d 353, 357 (Tex.App.-Houston [14th Dist.] 2003, orig. proceeding). "To make a prima facie showing of the applicability of a privilege, a party must plead the particular privilege, produce evidence to support the privilege through affidavits or testimo-

---

**2.** A sampling of the questions Higby refused to answer includes: "Sir, did you only learn about the existence of it, the Dr. Halbridge deposition in Lange, through the ACOG grievance process?"; "Sir, did you ever pass on to ACOG any of this testimony where Dr. Halbridge was deferring to other specialties when he was being questioned by the lawyers that hired you?"; "Did you ever tell the ACOG Grievance Committee after you filed Exhibit 1 that there is or may be a confidentiality or nondisclosure agreement or protective order relating to the Lange litigation?"; "Did you ever ... try to submit additional information to the ACOG Committee and have it rejected?"

ny, and produce the documents for an *in camera* inspection, if the trial court determines review is necessary." *Id.* "An appellate court may not deal with disputed areas of fact in a mandamus proceeding." *West v. Solito,* 563 S.W.2d 240, 245 (Tex. 1978). Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless the decision is shown to be arbitrary and unreasonable. *Walker,* 827 S.W.2d at 840.

Appellate review of a trial court's determination of the legal principles controlling its ruling is, however, much less deferential. *Id.; In re Ching,* 32 S.W.3d 306, 310 (Tex.App.-Amarillo 2000, orig. proceeding). A trial court has no "discretion" in determining what the law is or in applying it to the facts. *Walker,* 827 S.W.2d at 840; *Ching,* 32 S.W.3d at 310. A clear failure of the trial court to analyze or apply the law correctly constitutes an abuse of discretion that may result in the grant of an extraordinary writ. *Walker,* 827 S.W.2d at 839–40; *Ching,* 32 S.W.3d at 310.

Mandamus is proper to protect information subject to the medical peer review privilege. *See Mem'l Hosp.-The Woodlands v. McCown,* 927 S.W.2d 1, 12 (Tex. 1996) (orig.proceeding) (holding medical peer review privilege applies to medical credentialing process). The functions and activities of a committee determine whether it qualifies as a peer review committee entitled to privilege. *McAllen Methodist Hosp. v. Ramirez,* 855 S.W.2d 195, 199 (Tex.App.-Corpus Christi 1993, orig.proceeding). In deciding whether the trial court correctly applied the law concerning the medical peer review privilege, the appellate courts give the trial court's order no deference. *Ching,* 32 S.W.3d at 310.

## Medical Peer Review Privilege

Higby contends that the ACOG grievance committee is a medical peer review

committee, and therefore the medical peer review privilege applies. Halbridge asserts that it is not a medical peer review committee and that the privilege does not apply.

The Health and Safety Code provides which entities may form a medical peer review committee:

> The governing body of a hospital, medical organization, university medical school or health science center, health maintenance organization, extended care facility, hospital district, or hospital authority may form a medical peer review committee, as defined by Section 151.002, Occupations Code, or a medical committee, as defined by Section 161.031, to evaluate medical and health care services . . . .

Tex. Health & Safety Code Ann. § 161.0315(a) (Vernon 2010). It further provides that "[t]he records and proceedings of a medical committee are confidential and are not subject to court subpoena." *Id.* § 161.032(a) (Vernon 2010); *see In re Living Ctrs., Inc.,* 175 S.W.3d 253, 257 (Tex.2005) (orig.proceeding) (observing that, in determining applicability of privilege, court "analyzed the records, proceedings, and communications language of the medical committee privilege and the medical peer review committee privilege under Health & Safety Code section 161.032").

Section 151.002 of the Occupations Code defines "medical peer review" as:

> the evaluation of medical and health care services, including evaluation of the qualifications and professional conduct of professional health care practitioners and of patient care provided by those practitioners. The term includes evaluation of the:
>
> (A) merits of a complaint relating to a health care practitioner and a deter-

mination or recommendation regarding the complaint;

(B) accuracy of a diagnosis;

(C) quality of the care provided by a health care practitioner;

(D) report made to a medical peer review committee concerning activities under the committee's review authority;

(E) report made by a medical peer review committee to another committee or to the board as permitted or required by law; and

(F) implementation of the duties of a medical peer review committee by a member, agent, or employee of the committee.

Tex. Occ.Code Ann. § 151.002(a)(7) (Vernon Supp.2009); *see In re Living Ctrs.*, 175 S.W.3d at 256.

A "medical peer review committee" is defined as:

> [A] committee of a health care entity, the governing board of a health care entity, or the medical staff of a health care entity, that operates under written bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians, including evaluation of the performance of those functions specified by Section 85.204, Health and Safety Code.[3]

Tex. Occ.Code Ann. § 151.002(a)(8); *In re Living Ctrs.*, 175 S.W.3d at 256.

A "health care entity" is defined as:

(A) a hospital licensed under Chapter 241 or 577, Health and Safety Code;

(B) an entity, including a health maintenance organization, group medical practice, nursing home, health science center, university medical school, hospital district, hospital authority, or other health care facility, that:

(i) provides or pays for medical care or health care services; and

(ii) follows a formal peer review process to further quality medical care or health care;

(C) a professional society or association of physicians, or a committee of such a society or association, that follows a formal peer review process to further quality medical care or health care; or

(D) an organization established by a professional society or association of physicians, hospitals, or both, that:

(i) collects and verifies the authenticity of documents and other information concerning the qualifications, competence, or performance of licensed health care professionals; and

(ii) acts as a health care facility's agent under the Health Care Quality Improvement Act of 1986 (42 U.S.C. Section 11101 et seq.).

Tex. Occ.Code Ann. § 151.002(a)(5); *see In re Living Ctrs.*, 175 S.W.3d at 256.

The Occupations Code also provides:

Confidentiality Relating To Medical Peer Review Committee

(a) Except as otherwise provided by this subtitle, each proceeding or record of a medical peer review committee is confidential, and any communication made to a medical peer review committee is privileged.

. . . .

---

**3.** Section 85.204 of the Health and Safety Code regulates the procedures performed by health care workers infected with HIV or Hepatitis B. Tex. Health & Safety Code Ann. § 85.204 (Vernon 2010).

(e) Unless disclosure is required or authorized by law, a record or determination of or a communication to a medical peer review committee is not subject to subpoena or discovery and is not admissible as evidence in any civil judicial or administrative proceeding without waiver of the privilege of confidentiality executed in writing by the committee. The evidentiary privileges created by this subtitle may be invoked by a person or organization in a civil judicial or administrative proceeding unless the person or organization secures a waiver of the privilege executed in writing by the chair, vice chair, or secretary of the affected medical peer review committee.

. . . .

(g) A person seeking access to privileged information must plead and prove waiver of the privilege.

TEX. OCC.CODE ANN. § 160.007 (Vernon 2004); see Irving Healthcare Sys. v. Brooks, 927 S.W.2d 12, 20 (Tex.1996) (orig.proceeding) ("To the extent that the documents and communications at issue in this case are 'proceedings and records of a medical peer review committee,' they are confidential and not subject to discovery . . . ."). "[A] person who, in good faith, reports or furnishes information to a medical peer review committee or the [Texas Medical Board]" is "immune from civil liability." TEX. OCC.CODE ANN. §§ 151.002(a)(1), 160.010(a) (Vernon Supp. 2009).

The purpose of the medical peer review privilege is "to promote the improvement of health care and the treatment of patients through review, analysis, and evaluation of the work and procedures of various medical entities and their personnel," and "[t]he purpose of a medical peer review committee is to evaluate medical services, the qualifications of practitioners, and the quality of patient care given by those practitioners." Family Med.-U.T. v. Ramirez, 855 S.W.2d 200, 202–03 (Tex. App.-Corpus Christi 1993), overruled on other grounds, Mem'l Hosp.-The Woodlands v. McCown, 927 S.W.2d 1 (Tex.1996) (orig.proceeding). The purpose of medical peer review is "protection of an evaluative process, not mere records." In re Living Ctrs., 175 S.W.3d at 258; cf. McCown, 927 S.W.2d at 3–5 (holding that "the confidentiality provision of [the medical committee privilege] extends to initial credentialing by medical committees"); Jordan v. Fourth Court of Appeals, 701 S.W.2d 644, 649 (Tex.1985) (orig.proceeding) (holding that documents "not shown to be 'records and proceedings' of a hospital committee" are discoverable). The function a committee performs determines the protected status of its activities. Ramirez, 855 S.W.2d. at 203. Thus, when the board of a health care entity functions as a committee to evaluate the competence of the physicians in its employ or in its programs, the information is privileged. Id.

The Texas Supreme Court has held that "the medical peer review privilege will be strictly interpreted." In re Living Ctrs., 175 S.W.3d at 258 ("While the medical privileges are important in promoting free discussion in the evaluation of health care professional and health services, the right to evidence is also important, and therefore privileges must be strictly construed."). Thus, while a liberal interpretation of the terms "health care entity" and "medical peer review" in section 151.002 of the Occupations Code could encompass peer evaluation of grievances made by testifying experts, section 151.002(a)(8) makes it clear that the medical peer review privilege is intended to apply more narrowly, namely to the evaluation of patient care by a committee "that operates under written

bylaws approved by the policy-making body or the governing board of the health care entity and is authorized to evaluate the quality of medical and health care services or the competence of physicians." TEX. OCC.CODE ANN. § 151.002(a)(8); *see also* TEX. OCC.CODE ANN. §§ 151.002(a)(5) (defining "health care entity"), 151.002(a)(7) (defining "medical peer review"). We are required both by the rules of construction and by case law to read these provisions together. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005) (providing presumption that by enacting statute "the entire statute is intended to be effective"); *In re Living Ctrs.*, 175 S.W.3d at 258 (holding medical peer review privilege must be strictly construed).

ACOG is not an organization authorized to form a medical peer review committee by section 161.0315(a) of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 161.0315(a). Nor is its grievance committee organized "to evaluate medical and health care services" or the competence of physicians for purposes of credentialing or employment. *See id.* ACOG is not a professional society organized to evaluate patient care, and review of a grievance made to ACOG's grievance committee is not undertaken for the purpose of evaluating a physician's provision of patient care for credentialing or employment. Rather, ACOG broadly requests that its members report "evidence of questionable conduct or unethical behavior" by other physicians. It thus "receives, reviews and evaluates complaints from a College Fellow regarding professional conduct by a College Fellow that may violate the College's Code of Professional Ethics." It "also pursues and reviews final state medical board actions resulting from professional conduct inconsistent with the By-laws, including but not limited to serious state medical board actions such as revocation of license and any state medical board

disciplinary action based on sexual misconduct" to "determine if a complaint should be sustained and, if necessary, recommend disciplinary action to the Executive Board." Its members "may also act as a hearing panel for applicants whose membership as a Fellow has been denied by the College." And its decisions may result in discipline or expulsion from the College.

Nor does Higby's grievance filed with the committee concern Halbridge's provision of care to a patient. Rather, it is undisputed that neither he nor Halbridge had treated the parties in the underlying malpractice suit in which both offered expert testimony, and Higby's grievance concerns the quality of his testimony. Thus, the ACOG grievance proceeding filed by Higby does not fall within the limited scope of the medical peer review privilege. *See* TEX. OCC.CODE ANN. § 151.002(a)(8) (defining "medical peer review committee"); *In re Living Ctrs.*, 175 S.W.3d at 258 (holding medical peer review privilege must be strictly construed).

Significantly, ACOG references peer review committees in its literature, but nowhere in the records provided to this Court does ACOG describe its grievance committee as a medical peer review committee. Instead, it clearly references state medical board actions that evaluate a physician's provision of patient care for credentialing or employment purposes, "such as revocation of license," as distinct from any action of the ACOG grievance committee. It is also noteworthy that ACOG states, "The professional competence and conduct of obstetrician-gynecologists are best examined by professional associations, *hospital peer-review committees*, and state medical and licensing boards." (emphasis added).

Finally, I note that the Texas statutes treating the medical peer review privilege

do not expressly provide or reasonably imply that a medical peer review committee may review the quality of a physician's expert witness testimony in a medical malpractice proceeding. Although I have found no Texas case law directly on point, in *Fullerton v. Florida Medical Ass'n,* a Florida appellate court made a similar observation of Florida statutes in determining that the defendants in a defamation suit could not claim immunity because their complaint to the Florida Medical Association concerned expert testimony and not "the review of the professional conduct of a physician that might affect his or her patient's health." 938 So.2d 587, 594 (Fla. Dist.Ct.App.2006) ("Nothing in the provisions of the above statute, however, expressly provides or reasonably implies the professional body is empowered to review the quality of a physician's testimony in a medical-malpractice proceeding.").[4]

For all of the foregoing reasons, I would decline to characterize ACOG's grievance committee as a medical peer review committee. I would also decline to apply the medical peer review privilege to communications concerning expert witness testimony not directly related to the care of a patient.[5]

### Conclusion

I would hold that the discovery sought by Halbridge, the real party in interest, is not protected by the medical peer review privilege. I would, therefore, deny the

mandamus relief sought by Higby, the relator.

---

4. Dr. Fullerton offered expert witness testimony in a medical malpractice action brought against three doctors. *Fullerton v. Florida Med. Ass'n, Inc.,* 938 So.2d 587, 589 (Fla.Dist. Ct.App.2006). The doctors notified the Florida Medical Association that Fullerton "presented false testimony and false theories." *Id.* Fullerton sued the doctors and the FMA for several causes of action, including defamation. *Id.* The defendants moved to dismiss, contending that the claims were barred by the Florida and federal immunity statutes.

*Id.* at 590. The trial court dismissed the suit, but the appellate court reversed and remanded. *Id.* at 595.

5. *But see Austin v. Am. Ass'n of Neurological Surgeons,* 253 F.3d 967, 974 (7th Cir.2001) (indicating in dicta that professional review body was authorized by Health Care Quality Improvement Act to assess quality of physician's testimony given in medical-malpractice proceeding).